Earthel B. HILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 40745.

Court of Criminal Appeals of Texas.

Nov. 8, 1967.

D. C. Gandy, Fort Worth, Court Appointed on Appeal Only, for appellant.

Frank Coffey, Dist. Atty., R. J. Adcock and Gordon Gray, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Burglary; the punishment, seven (7) years confinement in the Texas Department of Corrections.

Appellant initially challenges the sufficiency of the evidence to sustain his conviction as a principal.

On the evening of August 15, 1966, Officers Means and Badalmenti, two Fort Worth City policemen, in response to an anonymous telephone call, went at approximately 9:45 p. m. to 3016 East 4th Street in Fort Worth, the home office building of the Great Court Heroines of Jericho. Upon arrival, Officer Means went to the west side and Officer Badalmenti went to the east side of the building, each proceeding along the wall to the front or northern part of the establishment. Officer Badalmenti testified that he flashed a light through the doorway leading into one of the rear rooms of the building and saw a figure inside the building run past his beam of light. Badalmenti then yelled that someone was inside, and as he approached the facade of the building he viewed a window with the glass broken out and its screen torn. Shortly thereafter both officers heard noises inside the building, heard glass breaking and then saw appellant "stumbling, crawling, and running out of the bushes" which covered the broken window that Officer Badalmenti had previously observed.

Officer Badalmenti drew his revolver and at the officer's command the appellant halted 30 or 40 feet from the bushes from which he had emerged. The appellant appeared to be nervous and excited and kept hollering "don't shoot, don't shoot." Upon being handcuffed the appellant, responding to the officers' questions, denied having a weapon and related that "just one" more man was in the building. The estimated time lapse between the detection of noises in the building by the officers and appellant's apprehension was approximately one minute. His statements to the officers followed his apprehension by 20 or 30 seconds. At the time of his arrest appellant was wearing a black leather glove on his left hand; his right hand was bare.

Officer Johnson, who arrived at the scene just as appellant was fleeing from the bushes, took custody of appellant from the other officers and searched him for weapons. He removed two sets of keys from appellant's rear pocket, and while still at the scene gave the keys "to the lady who manages the lodge there" when she identified them.

The appellant was placed in Officer Johnson's car and remained there while the officers apprehended Charles McDonald, the man inside the building. After McDonald's arrest he and the appellant were taken to jail in separate squad cars. A subsequent search of squad car No. 313 in which McDonald had been taken to jail by Officers Means and Badalmenti revealed the right-hand mate to the left-hand black glove found on the appellant. The glove had been stuffed behind the front seat where McDonald had been sitting in squad car No. 313. Both gloves were admitted into evidence.

Mrs. Esther Moore, Grand Secretary of the lodge and Office Manager, testified that

she had the care, custody and control of the building in question on August 15, 1966; that she had locked and secured the building when she left that afternoon at approximately 4 p. m.; that she had received a call at 9:30 or 10 p. m. that evening and went immediately to the building.

Upon her arrival at the scene she found police officers present and she opened the front door. It appears that the doors to the building were "jimmy-proof" and were all still locked. Mrs. Moore observed that the window previously described, as well as a smaller window in the kitchen, was broken. She found that the file cabinets had been ransacked with papers scattered on the floor, the kitchen oven door was open and oven racks were on the floor, and keys from prior locks on the building which she had seen in a top desk drawer the day before were missing. She related that this was not the condition in which she had left the building, and that she had not given the appellant or any other person permission to break and enter the premises or take property therefrom.

She related that missing keys were returned to her at the scene that night by one of the police officers after she had identified them.

The appellant did not testify or offer any evidence on his behalf.

The court charged the jury on the law of principals and circumstantial evidence and authorized the conviction of appellant if the jury found him guilty of the burglary charged "acting either alone or as a principal."

■ The evidence clearly reflects that a burglary was committed, which fact appellant concedes. This evidence when considered together with (1) the admission of appellant showing in effect his knowledge of a burglary in progress, (2) his flight from the scene, and (3) all the other circumstances including the discovery of the keys from the buildings on appellant's person, as well as the matching gloves, is sufficient to support appellant's conviction. See Middleton v. State, 86 Tex.Cr.R. 307, 217 S.W. 1046.

■ In view of the evidence discussed above, we find no merit in appellant's claim that the court erred in charging on the law of principals over objection, and in overruling the motion for instructed verdict on the ground that there was no evidence of probative nature to connect the appellant with the crime charged.

In his next ground of error appellant contends that the trial court erred in admitting over objection testimony by Officer Means as to an oral statement made by appellant while he was under arrest and without his having been given the statutory warning.

Immediately after appellant's apprehension, Officer Means inquired how many more people were in the building and appellant answered, "Just one." This is the statement complained of.

■ It is clear from the circumstances described above and appellant's nervous and excited condition at the time that such statement was admissible as part of the res gestae.

In Heath v. State, Tex.Cr.App., 375 S.W. 2d 909, this Court said:

"Statements of the appellant though in the nature of a confession, which are part of the res gestae are admissible though he be under arrest when the statements are made."

Further, "[t]he fact that a statement or declaration is made in reply to a nonleading question does not render it inadmissible under the [res gestae] rule." 24 Tex.Jur.2d, Evidence, Sec. 581, p. 104. See also Morris v. State, 157 Tex.Cr.R. 14, 246 S.W.2d 184.

■■ Only recently in Ramos v. State, 419 S.W.2d 359 (Oct. 18, 1967) we discussed the "verbal act" doctrine, sometimes referred to as the so-called res gestae rule.

There we pointed out that when the utterance of certain words constitutes or is part of the details of an act, occurrence or transaction which in itself is relevant and provable, the utterance may be proved as a verbal act, just as may be a visual observation of an event. This is not hearsay evidence; it is not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place. Wigmore on Evidence, Vol. VI, Sec. 1776, p. 197. See also Preston v. Commonwealth of Kentucky, Ky., 406 S.W.2d 398.

■ It appears that testimony offered by the State as to the acts and conduct and declaration of appellant was not admitted for purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place at the time appellant was apprehended when fleeing from the scene.

■ In his ground of error appellant does not refer to which statutory warning he claims he was not given. We, however, have rejected the contention that Article 15.17, Vernon's Ann.C.C.P. is applicable to res gestae statements. See Ramos v. State, supra.

■ Further, we do not interpret the rule laid down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, as excluding res gestae statements such as the one made under the circumstance here described.

Appellant still further contends that the trial court erred in overruling his motion for mistrial made at the conclusion of the jury argument. The basis of such motion was that State's counsel had in his argument misstated some of the facts of the case and his objection thereto had been overruled.

■ The transcription of the court reporter's notes of the jury argument is not before this Court, nor is any error presented by formal bill of exception. Article 40.09, Sec. 6, V.A.C.C.P. The record does not reflect that appellant requested the court reporter to take the jury argument as permitted by Article 40.09, Sec. 4, V.A.C.C.P. This ground of error is not before this Court for review. Havel v. State, 172 Tex. Cr.R. 584, 360 S.W.2d 878; Wright v. State, 266 S.W. 783; Davis v. State, Tex.Cr.App., 400 S.W.2d 568.

In his last ground of error appellant complains of the introduction, over objection, of a crowbar found on the burglarized premises.

The record reflects that following the arrest of the appellant and the other person found inside the building, an examination of the premises revealed a crowbar in a hallway which had not been there when the premises were locked and which did not belong to the owners of the building.

■ It seems to be appellant's position that the State was required to show connection between the crowbar and himself before it could become admissible. We cannot agree. No error is shown. See Rice v. State, 129 Tex.Cr.R. 52, 83 S.W.2d 964.

The judgment is affirmed.