**Andrew Otis TERRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40078.**

Court of Criminal Appeals of Texas.

Nov. 29, 1967.

Jack Hampton, Dallas, for appellant.

Henry Wade, Dist. Atty., Donald D. Koons, Tom F. Reese and Kerry P. Fitz-Gerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Robbery by Assault; the punishment, thirty (30) years confinement in the Texas Department of Corrections.

The appellant was tried on October 6, 1965, and gave notice of appeal on October 29, 1965, prior to the effective date of the 1965 Code of Criminal Procedure. On November 14, 1966, appellant attempted[1] to file an affidavit that he was a pauper and asked the trial court to appoint him an attorney on appeal and further requested "that I be accorded all rights and privileges pertaining to such appeal by an indigent." On this date the trial judge entered an order denying "the relief sought herein by defendant" on the ground that the affidavit was untimely filed. The transcript was received by this Court on December 9, 1966. The cause was subsequently removed from the submission list at the personal request of the appellant. On March 2, 1967, this appellant, now being represented by counsel on appeal, filed a motion in this Court to require the trial court to order a statement of facts. Said motion asserted that appellant had been represented by court appointed trial counsel, though the record indicates that the question of indigency was presented to the trial court for the first time on November 14, 1966. On April 26, 1967,

in view of the record before us, this Court entered an order suspending the appeal pending receipt of a transcription of the court reporter's notes or a finding of the trial court of facts showing that appellant waived or was not denied his right to such transcript or to effective aid of counsel in regard thereto.

The transcription of the court reporter's notes is now before us, and we shall consider the appeal on its merits.

Appellant's brief complains solely of the admission into evidence of an oral statement made by appellant while under arrest without any warning being given which appellant contends was not a part of the res gestae.

Christine Canipe testified that at approximately 9 p. m. on July 28, 1965, she was assaulted and robbed by appellant in the City of Dallas. She related that appellant took from her at the time her purse or Choo-Choo bag which contained, among other things, a billfold, a $10.00 bill and a sales slip from Sears and Roebuck in her former name of Christine Horton.

Approximately one hour and ten minutes later appellant was arrested by city police officers at a bus station in downtown Dallas. After questioning appellant for "a minute to a minute and a half" at the scene of the arrest, police officers placed him in a squad car and took him to the basement of the City Hall, which trip consumed "two or three minutes." Officer Kennedy, who had discovered Mrs. Canipe's billfold and the Sears and Roebuck sales slip on appellant's person at the time of his arrest, testified that "when we entered the ramp going into the (City Hall) basement" he inquired of the appellant who Christine Horton was and that the appellant stated that she was his sister. It is this statement the

---

1. The "affidavit" does not appear to have been sworn to before a person authorized by law to take oaths. Appellant's signature on the "affidavit" is followed by

"Sworn to and subscribed before me by Jack Dunn on this the 14 day of Nov., 1966." No other signature or seal follows such sentence in the "affidavit."

admissibility of which appellant questions. The State made no effort to show that the appellant did not in fact have a sister named Christine Horton.

The record reflects little or no evidence with regard to spontaneity of appellant's statement in response to the officer's question, but we need not determine whether it was a part of the res gestae.

"A confession is defined as a voluntary declaration by one person to another that the declarant has committed a crime." 24 Tex.Jur.2d, Sec. 646, p. 240. It is this type of statement which is prohibited by Article 727 (now Article 38.22), V.A.C.C.P., unless its requirements are met. The article has been held to relate solely to "confessions" and does not include exculpatory statements. See Article 38.22, Note 1, supra. We do not view appellant's declaration to be in the nature of a confession. It was neither a direct acknowledgment of responsibility for a crime or an admission of incriminating facts. Robinson v. State, 142 Tex.Cr.R. 636, 155 S.W.2d 811.

We conclude therefore that the trial court did not err in the admission of such testimony under the law in effect at the time of appellant's trial (October 6, 1965).

We call attention however to the recent holding of the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which holding is applicable to all trials commencing after June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

In Miranda, the Court, concerned with statements stemming from custodial interrogation,[2] said:

"No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement."

In discussing such holding Professor B. James George, Jr., in his book on "Constitutional Limitations on Evidence in Criminal Cases"[3] said:

"It has not been clear under earlier Supreme Court decisions, or in state appellate cases, whether the constitutional protection extended only to 'confessions,' in the sense of a complete revelation of criminality, and not to 'admissions,' defined as isolated statements which do not themselves delineate a criminal act but which later prove useful to the state in proving its case. There was an assumption collateral to this that if the suspect's statement was 'exculpatory' in nature, intended to explain away the allegations

---

2. In Miranda, the Court said:
    "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." In Footnote 4 the Court added, "This is what we meant

in Escobedo when we spoke of an investigation which had focused on an accused." Cf. Gaudio v. State, 1 Md. App. 455, 230 A.2d 700.

3. Institute of Continuing Legal Education, Ann Arbor, Mich., 1966, pp. 121, 122.

made by police against him, but later proved to have statements in it useful to the prosecution, the statement could be used against him.

"The *Miranda* decision sweeps away both bases of distinction. There is no difference between confessions and admissions: * * *.

"Nor does the purpose of the suspect in explaining away the charges make his statement admissible if the *Miranda* code has not been complied with. If they prove by the time of trial to be incriminating, and were obtained without warning and waiver, they are inadmissible for any purpose, including, apparently, impeaching the defendant's testimony if he desires to testify at his trial, p. 193. The warning to law enforcement officials is clear: before soliciting any statement, no matter how brief or self-serving its contents, comply fully with the *Miranda* code or tear up the resulting statement."

It should be observed, however, that recently in Hill v. State, 420 S.W.2d 408 (November 8, 1967) this Court said:

"Further, we do not interpret the rule laid down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, as excluding res gestae statements such as the one made under the circumstances here described." [4]

Finding no reversible error, the judgment is affirmed.

## CONCURRING OPINION

WOODLEY, Presiding Judge.

To the portion of the majority opinion which holds that the statement of the appellant that Christine Horton was his sister was admissible, I concur. I do not, how-

ever, agree with that portion which quotes from Miranda v. State of Arizona and from the writings of Professor George construing Miranda and suggests, if it does not by dicta hold, that said statement of appellant would not have been admissible had the trial commenced after June 13, 1966, by reason of Miranda v. State of Arizona.

---

4. The 1967 amendment to Article 38.22, V.A.C.C.P. (Acts 1967, 60th Leg., Ch. 659, pp. 1732, 1740, 1741) provides in part as follows:

    (f) Nothing contained herein shall preclude the admissibility of any state-

ment made by the defendant in open court at his trial or at his examining trial in compliance with Articles 16.03 and 16.04 *or of any statement that is res gestae of the arrest or of the offense.* (Emphasis Supplied)