Edgar Woodrow **FISK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 41504.

Court of Criminal Appeals of Texas.

Oct. 23, 1968.

John J. Herrera, Edward Benavides, Houston, for appellant.

Carl S. Vance, Dist. Atty., Phyllis Bell and I. D. McMaster, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is murder without malice; the punishment, assessed by the jury, five (5) years in the Texas Department of Corrections.

The appellant was indicted for the murder of Florence Fisk, his wife, by shooting her with a gun.

All three of appellant's grounds of error relate to the action of the trial court in admitting into evidence statements made by the appellant at or about the time of his arrest by Officer Dilman. It is appellant's position that the statements were not admissible as res gestae utterances nor otherwise admissible in absence of a compliance with Articles 15.17 and 38.22, Vernon's Ann.C.C.P.

At approximately 1:30 a. m. on July 13, 1966, a single shot awakened a neighbor of the appellant. A few minutes later appellant's young son appeared at the neighbor's house and requested that the police and a doctor be called. The neighbor testified that about five minutes later he observed a green and white Plymouth automobile back out of appellant's driveway and "head up the street." The police arrived within five minutes of receiving the call at 1:45 a. m. and found appellant's wife lying in a pool of blood. Before being taken to the hospital she stated to the police that her "old man" had shot her. At approximately 1:50 a. m. a description of appellant's automobile was broadcast to all Houston police units. Twelve minutes after such broadcast at 2:02 a. m. appellant in a green and white Plymouth was spotted by Officer Dilman, within five miles of the scene of shooting. Dilman followed appellant for six blocks and when both stopped at a red traffic light obtained appellant's name and verified by radio that he was the suspect wanted. Dilman then asked the appellant to get out of the car.

On direct examination of Officer Dilman the following testimony was elicited by the State:

"Q. Now, Officer, did the defendant appear, to you, to be agitated or excited?

"A. Yes sir.

"Q. Did he appear to be nervous? Nervous or distraught?

"A. Mr. Fisk was in a emotional upset condition in my mind.

"Q. Alright, sir, now, immediately upon approaching him did he say anything before you did?

"A. Yes sir.

"MR. HERRERA: Now, if the Court please, at this time, after the apprehension of the defendant on a police call, I object to any statement which the defendant made to the officer.

"THE COURT: That's overruled.

"MR. HERRERA: Note my exception.

"THE COURT: Yes sir.

"Q. What was the first thing he said to you, Officer?

"A. Mr. Fisk stated that * * *

"MR. HERRERA: If the Court please I'd like to have this witness on voir dire?

"THE COURT: That's overruled, counsel.

"MR. HERRERA: Note my exception.

"THE COURT: Yes sir.

"MR. HERRERA: If the Court please at this time I should like to have the Jury removed.

"THE COURT: That's overruled, counsel.

"MR. HERRERA: Note my exception.

"Q. What was the first thing he said, Officer?

"A. As I recall Mr. Fisk stated that he had had enough of that mess out there; and when he did I threw up my hand and told him I didn't want to hear anything he had to say * * *

"Q. Did he continue to talk?

"A. * * * because it was—anything he said could possibly be used against him, in a criminal action.

"Q. Did he continue trying to talk?

"MR. HERRERA: If the Court please, at this time I wish to make my objection.

"THE COURT: That's overruled.

"MR. HERRERA: Note my exception.

"THE COURT: Yes sir.

"A. Mr. Fisk stated that he knew all about that, and he kept on talking.

"Q. What did he say?

"A. He stated again that he had had enough of that mess out there.

"Q. What else did he say?

"A. That because he was born with a short pecker she didn't have to throw it up to him every night because she had found a man with a big one.

\* \* \* \* \* \*

"Q. In the same conversation—the same talk that he was giving you, did he say anything about a shooting?

"A. Where did I stop?

"Q. That she had found somebody with a long one.

"A. Fisk stated he had had enough of them and lost his temper and shot her.

"Q. Did he say who he shot?

"A. No sir."

At approximately 3:20 a. m. appellant's wife was pronounced dead at the hospital. The cause of death was exsanguination from a gunshot wound of left femoral artery.

Testifying in his own behalf, appellant claimed that the rifle went off accidentally in a struggle with his wife following an evening of quarreling and discord. The physical evidence, particularly the absence of powder burns, was at a variance with appellant's testimony and the jury rejected his defense. While denying the statements attributed to him by Officer Dilman, appellant admitted that at the time he was excited and in a state of shock.

It is appellant's position that because of the time-space lag (approximately 35 minutes and 5 miles) between the shooting and the statements complained of (if made), they could not have been spontaneous declarations.

The general rule is appropriately stated in 24 Tex.Jur.2d, Evidence, Sec. 581, p. 102:

"No single rigid principle governs the admissibility of evidence under the rule. On the contrary, in determining what acts or declarations are part of the res gestae, so as to be admissible under the rule, each case must be considered on its own particular facts."

█ In determining the admissibility of spontaneous declarations the element of time is an important factor to take into

consideration, but it is not the controlling factor. The paramount factor, upon which time has an important influence, "is whether the person who made the statement or declaration was still dominated at the time by emotions instigated by the happening of the principal act or event." 24 Tex.Jur. 2d, Evidence, Sec. 585, p. 113. See also "Res Gestae Confession," 17 Baylor Law Review 460.

Fowler v. State, Tex.Cr.App., 379 S.W.2d 345, presented a fact situation similar to the case at bar. Fowler was prosecuted for failure to stop and render aid. He was apprehended some 25 minutes after the accident and 10 blocks from the scene. Through the arresting officers, the trial court allowed the statement, attributed to Fowler, "We are trying to get the fender pulled back out so we can go back to the scene of the wreck." In affirming the trial court's action, this Court said:

"To be admissible as res gestae, statements or declarations must be substantially contemporaneous with the principal fact or transaction although they need not be precisely contemporaneous with it. 24 Tex.Jur. 585. The time element, however, is not the controlling factor insofar as admissibility of the evidence is concerned. The controlling factor being spontaneity or whether the statement made was instinctive. In other words, the statement or declaration must have been made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection."

In Keefe v. State, 50 Ariz. 293, 72 P.2d 425, it was said:

"The true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether that nervous excitement has died away * * *"

Such statement was quoted with approval by the Court of Appeals of Kentucky in Preston v. Commonwealth, 406 S.W.2d 398, and in turn by this Court in Ramos v. State, Tex.Cr.App., 419 S.W.2d 359.

▆▆▆ In the instant case the record clearly reflects that appellant at the time of the statements was still in a state of shock and under the stress of the nervous excitement of the shooting. He continued to talk despite the officer's attempt to silence him and to warn or admonish him. We feel that the statements attributed to him were properly admitted as res gestae declarations. See Phillips v. State, 137 Tex.Cr.R. 206, 128 S.W.2d 393; Howell v. State, 171 Tex.Cr.R. 545, 352 S.W.2d 110. Under such circumstances it is immaterial whether appellant was or was not under arrest.[1] 24 Tex.Jur.2d, Evidence, Sec. 600, p. 137.

▆▆▆ We further reject appellant's contention that the admissibility of such statements is governed by Articles 15.17 and 38.22, supra. Such articles are not applicable to res gestae statements. See Ramos v. State, supra. See also Wright v. State, Tex.Cr.App., 388 S.W.2d 194; Clifton v. State, 156 Tex.Cr.R. 655, 246 S.W. 2d 201; Gonzales v. State, Tex.Cr.App., 373 S.W.2d 249. Cf. Hill v. State, Tex. Cr.App., 420 S.W.2d 408; Terry v. State, Tex.Cr.App., 420 S.W.2d 945.

[1] Appellant's trial commenced on February 27, 1967, and the 1967 amendment to Article 38.22, V.A.C.C.P. (effective August 28, 1967) is not applicable. It is observed, however, that Section 1(f) of said article now provides:

"Nothing contained herein shall preclude the admissibility of any statement made by the defendant in open court at his trial or at his examining trial in compliance with Articles 16.03 and 16.04 *or of any statement that is the res gestae of the arrest or of the offense.*" (Emphasis Supplied)

Grounds of error #1 and #2 are overruled.

In view of what we have said above, we perceive no error in the failure of the trial court to remove the jury before hearing testimony as to such res gestae statements. Ground of error #3 is overruled.

The judgment is affirmed.