502

Juan Andres CORDOVA

v.

STATE of Texas.

No. 04–87–00086–CR.

Court of Appeals of Texas,
San Antonio.

July 20, 1988.

Luis Antonio Figueroa, Laredo, for appellant.

Carlos H. Barrera, Asst. Criminal Dist. Atty., Laredo, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

The conviction is for murder. The punishment assessed by the same jury is a term of confinement for forty years and a fine of $5,000.00.

The salient facts reveal a shooting by appellant of his girl friend following an apparent lover's quarrel. The evidence further shows that appellant drove the wounded girl friend to a local hospital for treatment where she expired a short time thereafter. Following investigation by Laredo police detectives of appellant's account of the shooting, the investigation began to focus on appellant. Appellant's version of how the shooting occurred led the detectives to other evidence tending to disprove the manner of the shooting described by appellant.

■ In his first point of error, appellant alleges that the trial court erred in admitting into evidence, over objection, the results of an atomic absorption test. The record reflects that both appellant and the deceased were subjected to an atomic absorption analysis to test for the presence of gunshot residue.

The evidence showed that the deceased was killed by a weapon firing a .22 caliber Remington projectile. The chemist testifying about the testing procedures testified that the only American manufacturer of small caliber ammunition using antimony was Federal. The results of the atomic absorption test did not disclose the presence of antimony in swabbings taken from the hands of appellant and body of the deceased. According to the chemist, the test results did not produce much in the way of evidence, but it could be concluded that neither swabbings disclosed the presence of antimony because Remington did not use antimony in its small caliber ammunition.

On appeal appellant cites *Garcia v. State,* 522 S.W.2d 203 (Tex.Crim.App.1975) and cases from other jurisdictions for the proposition that the results of a paraffin test are unreliable. *See Brooke v. People,*

139 Colo. 388, 339 P.2d 993 (1959); *Born v. Oklahoma,* 397 P.2d 924 (Okla.Crim.1964), *cert. denied,* 379 U.S. 1000, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965); *Clarke v. State,* 218 Tenn. 259, 402 S.W.2d 863, *cert. denied,* 385 U.S. 942, 87 S.Ct. 303, 17 L.Ed.2d 222 (1966).

Whether a paraffin test is an unreliable test and therefore the results are inadmissible is immaterial because the only pertinent inquiry is regarding an atomic absorption test.

Appellant has offered no authority or argument regarding the inadmissibility of such a test. In the instant case the chemist was duly qualified as an expert in the field. He was, therefore, competent and qualified to testify. *Hopkins v. State,* 480 S.W.2d 212 (Tex.Crim.App.1972). An objection to his testimony was addressed to the weight and not to the admissibility. Appellant's first point of error is overruled.

■ Appellant next contends that the trial court erred in admitting into evidence, over timely objection, his oral confession made under custodial interrogation.

Pursuant to a trial objection filed by appellant, the trial court conducted a hearing out of the presence of the jury. James Roycroft, an investigator with the Laredo Police Department testified that he was assigned to investigate the shooting of appellant's girl friend at 2:00 a.m. on September 7, 1985, the morning after the shooting. When he arrived at the police station, he interviewed appellant who was being detained as a suspect. Following a reading of the *Miranda* [1] warnings, appellant related that the deceased had picked him up at his residence on the evening of the 6th at approximately 8:45 p.m. on their way to the fair in Nuevo Laredo, Mexico. On the return trip to Laredo, Texas, the two were headed towards the home of the deceased's mother to pick up the deceased's children. According to appellant, while travelling down Guadalupe Street and in front of the El Rio Family Center, he heard a bang. Immediately the deceased fell in his lap with blood gushing from her head. After a

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

futile attempt to summon help, appellant drove her to the hospital. Appellant described the vehicle to the police and advised that it had been left parked by the Emergency Room entrance.

As a result of appellant's statement, police located the vehicle and observed the blood-spattered interior. A casing from a .22 caliber bullet was observed on top of the instrument panel. Also found inside the vehicle under the gas pedal was a shoe belonging to the victim. Appellant's statement further led police to the scene of the shooting on Guadalupe Street where officers observed a trail of blood leading from the middle of the street in the 1400 block to an empty parking lot at the 1300 block of Guadalupe Street.

An examination of the victim's head disclosed that she had been shot between the nose and left eyebrow at very close range as evident by the powder burns.

Following the *Jackson v. Denno*[2] hearing, the court filed its findings and conclusions wherein the court found that appellant was properly given the required *Miranda* warnings, that he voluntarily gave a statement to police and that the statement contained "assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted ... property or the instrument with which he states the offense was committed." *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3(c).

Specifically, the trial court found that the statement led Investigator Roycroft to a red T–Bird automobile located at the parking lot of Mercy Hospital; that the inspection of the vehicle led to discovery of blood spatters, of a .22 caliber casing on top of the instrument panel, as well as of one of the deceased's shoes. The trial court additionally found that the statement led police to a trail of blood leading from the 1400 block of Guadalupe Street to the 1300 block of the same street.

The court finally found and concluded that the statement was not obtained through inducement, threats, persuasion, compulsion, intimidation, violence, promises or any other act other than a result of a free and voluntary act of appellant.

The record supports the trial court's findings and conclusions. On appeal, appellant does not challenge the findings of the court other than to take exception with the trial court's finding that the statement was admissible pursuant to TEX.CODE CRIM. PROC.ANN. art. 38.22, § 3(c).

Article 38.22 in pertinent part provides:

Sec. 3. (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate, has not been altered, and reflects that the accused was advised before the interrogation that the interrogation will be recorded; and

(4) all voices on the recording are identified.

(b) Every electronic recording of any statement made by an accused during a custodial interrogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law.

(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances

---

**2.** *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), *see also* TEX.CODE

CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979).

that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

It is undisputed that the oral statement was not electronically recorded. Appellant argues that the oral statements were not admissible because the evidence the State claims it recovered as a result of the statement was, allegedly, already known to police and was not found as a result of anything appellant said. Appellant relies on *Smith v. State*, 514 S.W.2d 749 (Tex.Crim. App.1974) and *Garner v. State*, 464 S.W.2d 111 (Tex.Crim.App.1971).

We first observe that the oral statement attributed to appellant is in fact not a confession as characterized by appellant because it was neither a direct acknowledgement of responsibility for a crime nor an admission of incriminating facts. *Robinson v. State*, 142 Tex.Crim. 636, 155 S.W.2d 811 (1941). It was in fact intended to be exculpatory by appellant. Nevertheless *Miranda* has long taught us that no distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory." This is so because experience teaches us that if a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution.

Our examination of *Smith v. State* and *Garner v. State* gives us no reason to quarrel with their holdings. In each case it is clear that the oral statements did not lead to evidence not already in the possession of law enforcement officers. In the instant case the evidence clearly reflects that appellant's automobile had not yet been located at the time appellant's statement was given. In fact, it was not until Investigator Roycroft went to the hospital parking lot with a particular description in hand that the vehicle was found and tied to the instant homicide. The same is true about the scene of the crime.

We hold that the statement by appellant contained numerous assertions of facts or circumstances that were shown to be true and which conduced to establish the guilt of the accused. In fact, but for the statement made by appellant, the State's case of circumstantial evidence might not have been established. Appellant's second point of error is overruled.

Appellant's third point of error alleges that the trial court was without authority to include in its judgment and sentence a finding of a deadly weapon because the jury made no such affirmative finding.

The indictment, formal parts omitted, reads:

... on or about the 7th day of September A.D., 1985 ... Juan Andres Cordova did, then and there, intentionally and knowingly cause the death of an individual, Sara Alica Cantu, by shooting her with a gun, ...

The jury's verdict reads:

We, the jury, find the defendant, Juan Andres Cordova, guilty of the offense of murder, Felony 1, as charged in the indictment.

The judgment and sentence in this case reads:

\*      \*      \*      \*      \*      \*

Findings on use of Deadly Weapon: Based on the evidence in this case, the court finds that the defendant, Juan Andres Cordova, exhibited and used a deadly weapon, to wit: a firearm, in the commission of the offense of murder, which occurred on the 7th day of September, 1985 ...

\*      \*      \*      \*      \*      \*

Based on the evidence in this case, the court finds that the Defendant, Juan Andres Cordova, exhibited and used a deadly weapon, to-wit: A firearm, in the commission of the offense of murder, which occurred on the 7th day of September, 1985.

▮ We initially agree that the recitation in the judgment and sentence that the trial court found use of a deadly weapon is erroneous. Since a jury determined appellant's guilt and punishment, it alone was the proper fact finder to determine whether appellant used a deadly weapon. *Ex parte*

*Thomas,* 638 S.W.2d 905 (Tex.Crim.App. 1982) (en banc); *Barecky v. State,* 639 S.W. 2d 943 (Tex.Crim.App.1982).

We further observe that the indictment does not allege that a deadly weapon or firearm was used. Nor was a special issue submitted and answered affirmatively by the jury on use of a deadly weapon.

We next examine the indictment to see if the weapon alleged to have been used is a firearm or a deadly weapon per se. The allegation describes use of a gun by shooting.

■ A pistol is a deadly weapon per se. *Giles v. State,* 617 S.W.2d 690 (Tex.Crim. App.1981); *Williams v. State,* 567 S.W.2d 507 (Tex.Crim.App.1978). A firearm is a deadly weapon per se. *Stewart v. State,* 532 S.W.2d 349 (Tex.Crim.App.1976). A 30–30 caliber rifle *Bravo v. State,* 627 S.W. 2d 152 (Tex.Crim.App.1982) (en banc) and a handgun, *Dade v. State,* 622 S.W.2d 580 (Tex.Crim.App.1981) are deadly weapons per se.

■ A gun has yet to be declared a deadly weapon per se. In fact the Court of Criminal Appeals clings to the notion that there exists a difference between "gun," "handgun," "pistol" and "firearm." [3] A gun is not a deadly weapon per se. *Boyett v. State,* 692 S.W.2d 512 (Tex.Crim.App. 1985) (en banc); *Chavez v. State,* 657 S.W. 2d 146 (Tex.Crim.App.1983), *overruled on other grounds, Polk v. State,* 693 S.W.2d 391, 396 (Tex.Crim.App.1985).

■ In *Rodriguez v. State,* 743 S.W.2d 287 (Tex.App.—San Antonio 1987, pet. granted), this Court dealt with the identical fact situation. In that case the State advocated the adoption of a per se ruling as a deadly weapon when the word utilized in the indictment is "gun." We declined to do so and in reliance upon *Boyett v. State, supra,* ordered the affirmative finding stricken from the judgment and reformed the judgment by deleting all references to

deadly weapon.[4] *See Rodriguez,* 743 S.W. 2d at 289–90.

We will do the same in the instant case and order that all references to use of a deadly weapon be deleted from the judgment and sentence. Appellant's third point of error is sustained.

■ Appellant next contends that the trial court committed fundamental error during the punishment phase when it failed to submit instructions to the jury on the law of parole.

TEX.CODE CRIM.PROC.ANN. art. 37.-07, § 4(a) was declared unconstitutional as violative of the separation of powers provision [Art. II, § 1] and due course of law provision [Art. I, §§ 13, 19] of the Texas Constitution in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1987) (on original submission); *See also* (opinion on rehearing delivered June 15, 1988).

It was observed that such an instruction was calculated to deny the right of an accused to a fair and impartial trial on the issue of punishment. In such cases where the instruction was included in the trial court's charge and complaint was made on appeal, the Court of Criminal Appeals established the harmless error standard of review to be controlled by TEX.R.APP.P. 81(b)(2). In a case where the instruction was not given such a review would be unnecessary because such failure to give the instruction would be a beneficial act since clearly an appellant would not and should not be heard to complain that the trial court spared him an instruction calculated to deny him a fair and impartial trial. Moreover, it is clear from a reading of the instant record that appellant was satisfied with the court's failure to include the instruction since he did not at all complain at the time and only now on appeal does he complain for the first time. We hold that appellant's complaint is totally without merit and overrule it.

---

3. A discussion of the differences and similarities was explored in *Ex parte Campbell,* 716 S.W.2d 523 (Tex.Crim.App.1986) but the matter as it touches upon "gun" was not resolved.

4. The author of this opinion noted his disagreement with the *Boyett* holding in *Willmann v. State,* 720 S.W.2d 543, 549–51 (Tex.App.—San Antonio 1986, pet. ref'd.).

The judgment of the trial court as reformed is affirmed.