

NUMBER 13-13-00172-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ABRAHAM JACOB PROENZA,                                                Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

**On appeal from the 404th District Court
of Cameron County, Texas.**

# DISSENTING OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Dissenting Opinion by Justice Garza**

I agree with the majority's conclusions that the evidence was sufficient to support Proenza's conviction and that the trial court's comments during the testimony of Dr. Carol Grannum constituted fundamental error. However, I respectfully dissent because I believe that: (1) the error in making the comments was not "structural" such that no harm analysis is required; (2) the error was harmless under the applicable standard; and (3)

Proenza's other issues lack merit.

## I. PEDIATRICIAN COMMENTS

In *Blue v. State*, the Texas Court of Criminal Appeals found that comments by the trial judge were improper because they "tainted appellant's presumption of innocence in front of the venire." 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.). The court of criminal appeals found that this constituted "fundamental error" which may be raised for the first time on appeal—yet it remanded to the appellate court for further proceedings rather than rendering a judgment of acquittal or remanding to the trial court for a new trial. *Id.* at 133. The appellate court's subsequent opinion on remand consisted only of a brief harm analysis. *See Blue v. State*, 64 S.W.3d 672, 673 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("*Blue II*") (concluding that the error was harmful under Texas Rule of Appellate Procedure 44.2(a)). The court of criminal appeals' disposition in *Blue* shows that just because an error is "fundamental" does not mean that the error is necessarily "structural" error that is immune to a harm analysis. *See Blue*, 41 S.W.3d at 133; *see also Johnson v. State*, 169 S.W.3d 223, 236 (Tex. Crim. App. 2005) (noting, in discussing the right of appellant to testify, that "[c]haracteriz[ation of the right] as 'fundamental' does not necessarily mean that a violation of the right is 'structural'"). Instead, an error involving improper comments by a trial judge is subject to a separate harm analysis as prescribed in Texas Rule of Appellate Procedure 44.2(a), under which we must reverse "unless [we] determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see Blue II*, 64 S.W.3d at 673; *see also Lyssy v. State*, No. 07-10-0474-CR, 2012 WL 4372936, at *1 (Tex. App.—Amarillo Sept. 21, 2012, order) (not designated for publication) (noting that "inappropriate comments by a trial

2

judge are not structural errors, immune from a harmless error analysis").

Considering the entirety of the record, I would determine beyond a reasonable doubt that the trial court's comments regarding her experiences with her own pediatrician did not contribute to Proenza's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). The comments made by the trial court may have indicated that the judge was biased as to the issue of whether Proenza could have taken A.J.V. for a follow-up at Su Clinica without parental authorization. But I do not believe that these isolated comments demonstrated that the judge was partial overall, or biased as to the issue of Proenza's guilt in general. *Cf. Johnson*, 169 S.W.3d at 235 (Tex. Crim. App. 2005) (noting that lack of an impartial trial judge is structural error immune to harm analysis).

More importantly, the state of the evidence rendered the comments virtually inconsequential as to whether Proenza was guilty of the charged offense. Grannum testified that, if Proenza had shown up at Su Clinica without parental authorization but with the child in acute distress, the clinic would have called EMS and directed Proenza to take the child to the emergency room. Further, it was undisputed that Proenza could have taken A.J.V. to a hospital emergency room without parental authorization. Proenza did not take the child to the emergency room, and he did not offer any explanation for why he failed to do so. Accordingly, even if the trial court had never made the comments, the jury was still overwhelmingly likely to have reached the same ultimate conclusion—i.e., that Proenza intentionally or knowingly caused A.J.V. serious bodily injury by omission.

For the foregoing reasons, I would find that the error in this case, though "fundamental" such that no trial objection was required to preserve the issue on appeal, was not "structural" error for which no harm analysis is required. And, applying the harm

3

analysis mandated by the rules of appellate procedure, I would find that the error is harmless. *See* TEX. R. APP. P. 44.2(a); *Blue*, 41 S.W.3d 129, 132; *Blue II*, 64 S.W.3d at 673. I would overrule this part of Proenza's second issue.

## II. "CONFESSION" COMMENTS

Because I would find that the trial court's comments regarding her experiences with her own pediatrician to be harmless error, I would proceed to address the remainder of Proenza's arguments on appeal.

Proenza additionally argues by his second issue that the trial court improperly commented on the weight of the evidence by repeatedly referring to his recorded interview with law enforcement as a "confession." *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West, Westlaw through ch. 46, 2015 R.S.) (providing that, before the return of the verdict, the trial judge shall not "make any remark calculated to convey to the jury his opinion of the case"). Proenza complains that the trial court's comments "undoubtedly influenced the jury's verdict" because they "implie[d] approval of the State's argument, indicate[d] disbelief in the defense's position, and diminishe[d] the credibility of the defense's approach to the case."

In response, the State asserts, among other things, that Proenza did not preserve error on this issue because he did not object to the trial court's comments at the time they were made. *See Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). Proenza also argues, as he did with respect to the pediatrician comments, that the error in making the "confession" comments was "fundamental" such that his counsel's failure to object at trial did not waive the error.

**A. The Comments**

The following exchange occurred in the presence of the jury before the State played a DVD recording of one of Proenza's interviews with law enforcement:

> THE COURT: Let me explain this to the jury. Ladies and gentlemen of the jury, the original confession was recorded on a VHS tape. Y'all are familiar with a VHS tape? All right. Let the record indicate that all of the jurors nodded affirmatively. Of course, technology has improved from VHS to digital, and so [defense counsel] and his client have seen the VHS tape. Today the State appears with it on a DVD or a CD player.
>
> [Prosecutor]: Yes, Your Honor.
>
> THE COURT: On a CD player. And so [defense counsel], without seeing this data on the CD or DVD, is unable to verify that it's the same information. Although I have not admitted it, I'm going to play it, because the only way for [defense counsel] to see that it hasn't been changed, as far as the contents is concerned, other than the form, is by playing it. And so we're going to play it and then we'll ask [defense counsel] if that's the same confession that he saw when it was on VHS tape.

At first, the DVD was inaudible, and attempts were made to find an alternate player. After the matters were resolved, the trial court said: "All right. So let's rewind to the beginning and start playing that. And if it doesn't get any better, then you don't have a confession." The recording was played in its entirety and admitted, without objection, as State's Exhibit 33.

The only other reference to Exhibit 33 as a "confession" was by defense counsel when he asked Investigator Valerio the following question during his cross-examination: "You said a while ago that in the interview, or confession, as you call it, on Mr. Proenza, that he was not concerned about the child?" Investigator Valerio responded, "That's correct."

5

**B.    Discussion**

"A confession is defined as a voluntary declaration by one person to another that the declarant has committed a crime."  *Terry v. State*, 420 S.W.2d 945, 947 (Tex. Crim. App. 1967) (internal quotations and citations omitted).  A confession contains "a direct acknowledgement or responsibility for a crime or an admission of incriminating facts." *See id.* (citing *Robinson v. State*, 142 Tex. Crim. 636, 639, 155 S.W.2d 811, 812 (1941) (per curiam)); *Cordova v. State*, 754 S.W.2d 502, 505 (Tex. App.—San Antonio 1988, no pet.).

During the interview on which this argument is based, Proenza stated, among other things, the following:  (1) at three months, A.J.V. looked fine; (2) they tried to feed the child; (3) A.J.V. kept "getting skinnier and skinnier"; (4) compared to other "kids," A.J.V. was small; (5) Proenza discussed this with his wife who told him that A.J.V. was like his brothers; (6) after drinking four or five ounces, A.J.V. would gag and then "it could come out"; (7) Proenza wondered if A.J.V. was healthy; (8) he was "trying to tell [his] wife," and was waiting for papers from his sister-in-law; (9) A.J.V. vomited for about a month beginning in the middle of July; (10) Proenza asked family members and friends if that was normal; (11) A.J.V. accepted three eight-ounce bottles of Similac a day and would just sip others and then drop them; (12) A.J.V. missed his August appointment at the clinic because Proenza did not have the papers to take him; (13) A.J.V. had a sad demeanor; (14) when asked if A.J.V. would have been attended to at the hospital if Proenza had taken him there, Proenza answered, "Yes, Sir"; (15) Proenza agreed that he should have taken A.J.V. to the doctor and that A.J.V. was his responsibility; and (16) Proenza stated

6

that during the afternoon of the day of his death, A.J.V. "was doing fine. He looked sick, not that he was actually dying," like he had the flu or a cold.

Although the State and Proenza referred to this recording as either a statement or an interview, I believe that the statement was in the nature of a confession because it contained numerous admissions of incriminating facts. *See Terry*, 420 S.W.2d at 947 (citing *Robinson*, 142 Tex. Crim. at 639, 155 S.W.2d at 812); *Cordova*, 754 S.W.2d at 505. By referring to Proenza's recorded statement as a confession, the trial court did not express its approval of the State's argument, indicate disbelief in Proenza's position, or diminish the credibility of his approach to the case, as Proenza urges. *See Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.)*; see also* TEX. CODE CRIM. PROC. ANN. art. 38.05. Instead, the court merely described the statement appropriately as a confession and did not violate article 38.05 by impermissibly commenting on the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05. Because I would conclude that the trial court's use of the word "confession" was not a comment on the weight of the evidence, I would not reach Proenza's fundamental-error argument on this matter. I would overrule Proenza's second issue in its entirety.

### III. MOTION TO RECUSE

By his third issue, Proenza complains that his motion to recuse the trial judge should have been granted because she was partial and biased. *See* TEX. R. CIV. P. 18b(b)(1–2). On appeal, Proenza claims that he established that the impartiality of the trial judge might reasonably be questioned and that she was biased against him based on the following: (1) the trial judge questioned his decision to hire a new attorney prior to trial and stated on the record that Proenza could not hire a different attorney if he became

7

dissatisfied with his new attorney; and (2) during her political campaign, the trial judge "publicly chastised her opponent for giving defendants probation in child abuse cases." *See id.* The State claims, in relevant part, that the motion to recuse was properly denied because Proenza failed to timely file his motion. *See* TEX. R. CIV. P. 18a(b)(1)(A), (B)(ii). I agree with the State.

## A. Applicable Law and Standard of Review

A motion to recuse "must be filed as soon as practicable after the movant knows of the ground stated in the motion." TEX. R. CIV. P. 18a(b)(1)(A). In addition, the motion must not be filed "after the tenth day before the date set for trial . . . unless, before that day, the movant neither knew nor reasonably should have known . . . that the ground stated in the motion existed." TEX. R. CIV. P. 18a(b)(1)(B)(ii). These procedural requirements are mandatory, and a party who fails to comply waives his right to complain of a judge's failure to recuse herself. *Vickery v. Tex. Carpet Co., Inc.*, 792 S.W.2d 759, 763 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (citing *Gaines v. Gaines,* 677 S.W.2d 727, 730 (Tex. App.—Corpus Christi 1984, no writ)).

On appeal, we review the denial of a motion to recuse under an abuse of discretion standard. TEX. R. CIV. P. 18a(j)(1)(a). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles. *Mosley v. State*, 141 S.W.3d 816, 834 (Tex. App.—Texarkana 2004, pet. ref'd).

8

**B.      Substitution of Counsel**

As a basis for his motion to recuse, Proenza asserted that the trial judge violated his right to retained counsel of choice.   Proenza complains of the following comments made by the trial judge on August 30, 2012, at the hearing on his motion to substitute counsel:

> And, Mr. Proenza, the way I feel about cases is that—and what I try to prevent in my Court is lawyers—firing one group and hiring another and then in three months you fire Mr. Gonzales and hire somebody else and you continue this case.  I believe that justice—trial delayed is justice delayed. And so we have to finish this case.  And so that is my concern.  And so I'm not going to put up with that from you.  So are you sure that you want to move from the Garzas to Mr. Gonzales?  Because you're going to have to stay with Mr. Gonzales regardless of how this turns out two or three months down the road, "Oh, I don't like Mr. Gonzales, I want to go back to the Garzas, or somebody else," you're going to be stuck with the lawyer you have.  Because I'm not going to allow lawyers—defendants to just keep moving around from lawyer to lawyer.

After the trial court made the foregoing comments, she granted Proenza's motion to substitute counsel.  During the hearing, the trial judge also set a trial date for December 3, 2012 and announcements for November 29, 2012.  Proenza did not file his motion to recuse—which was based, in part, on the trial judge's comments regarding his right to hire new counsel—until November 28, 2012.  Proenza knew of this ground on August 30, 2012, but chose not to file a motion to recuse on that basis until three months later, within five days of the scheduled trial setting.  *See* TEX. R. CIV. P. 18a(b)(1)(A), (B)(ii).

**C.      Political Advertisements**

Proenza also moved for recusal on the basis that the trial judge, while running for office, advertised that defendants in child cases needed tougher punishments.  Proenza specifically complained that the trial judge "repeatedly attack[ed] and criticize[d] the incumbent [j]udge for having given deferred probation to several defendants who had

9

been charged with some type of offense involving children." Yet, as Proenza noted in his motion to recuse, these political advertisements were run in 2008 during the trial judge's election campaign.

Proenza was indicted on April 14, 2010, arraigned on May 6, 2010, participated in pretrial hearings, and filed numerous pretrial motions during 2012, including a motion for discovery and an application for probation and election to have the jury assess punishment, both of which were filed after substitution of counsel. Proenza did not file his motion to recuse until November 28, 2012, although he knew or reasonably should have known of this ground before then. *See* TEX. R. CIV. P. 18a(b)(1)(B)(ii).

## D.    Discussion

Based on the above, I would conclude that the trial court did not abuse its discretion by denying Proenza's motion to recuse, because the motion was not timely filed. *See* TEX. R. CIV. P. 18a(j)(1)(A). The court acted with reference to the procedural rules set out in Rule 18a. *See Mosley*, 141 S.W.3d at 834; *see also* TEX. R. CIV. P. 18a(b)(1)(A), (B)(ii). Because the rule 18a procedural requirements are mandatory, *see* TEX. R. CIV. P. 18a(b)(1)(A), (B)(ii), and because Proenza failed to comply with those requirements, he has waived his right to complain of the trial judge's failure to recuse herself.[1] *See Vickery*, 792 S.W.2d at 763 (citing *Gaines,* 677 S.W.2d at 730). I would overrule Proenza's third issue.

---

[1] Because my discussion of the procedural requirements of rule 18a is dispositive of this issue, I do not address the merits of Proenza's motion to recuse. *See* TEX. R. CIV. P. 47.1.

10

## IV. AUTOPSY PHOTOGRAPHS

By his fourth issue, Proenza contends that the trial court abused its discretion when it admitted State's Exhibits 19 through 22 because they were "gruesome" autopsy photos which only served to inflame the jury. I disagree.

### A. Applicable Law

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401; *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1990) (op. on reh'g) (en banc). "Evidence which is not relevant is inadmissible." TEX. R. EVID. 402. But even evidence that is relevant may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. And while evidence offered by an opposing party will inherently be prejudicial, "unfair prejudice" results when the evidence tends to cause a decision to be based on an improper basis, such as emotion, "without regard to the logical probative force of the evidence." *Casey v. State*, 215 S.W.3d 870, 879–80, 883 (Tex. Crim. App. 2007); *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000) (explaining that unfair prejudice occurs when evidence provides "an undue tendency to suggest that a decision be made on an improper basis"). Specific as to photographs, "[i]f there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

11

**B.** **Standard of Review**

The decision to admit or exclude photographic evidence is generally left to the sound discretion of the trial court. *Prible v. State*, 175 S.W.3d 724, 734 (Tex. Crim. App. 2005) (citing *Erazo,* 144 S.W.3d at 488; *Williams v. State,* 958 S.W.2d 186, 195 (Tex. Crim. App. 1997) (en banc)).

The court of criminal appeals has provided a nonexclusive list of four factors to consider when analyzing a challenge to evidentiary rulings under rule 403: (1) the probative value of the evidence; (2) the extent that the evidence may "impress the jury in some irrational, but nevertheless indelible way"; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006); *Montgomery*, 810 S.W.2d at 389–90. Additionally, when deciding whether autopsy photographs are unfairly prejudicial, we should consider the number of photographs, the size of the photographs, whether they are in color or black and white, the detail depicted in the photo, the gruesomeness of the photo, whether the body is naked or clothed, and whether the body had been altered by the autopsy in a way that would be detrimental to the appellant. *Shuffield*, 189 S.W.3d at 787; *Prible*, 175 S.W.3d at 734; *Reese*, 33 S.W.3d at 241.

**C.** **Discussion**

Outside the presence of the jury, the State offered color autopsy photographs that depicted A.J.V.'s intestines and brain. The State explained that it offered these exhibits to show malnutrition and not some other cause of death. Defense counsel objected to "the grossness of [Exhibits 19 through 22], which actually would just inflame the minds of the jury and be used for no other purpose than for that." The trial court overruled

12

Proenza's objection. When the State offered Exhibits 19 through 22 before the jury, defense counsel again objected on the same bases: prejudice and relevance. The trial court again overruled Proenza's objections and admitted the exhibits.

### 1. Relevance

Autopsy photographs are generally admissible as relevant in helping the medical examiner explain the cause of death when there is some disputed fact concerning the victim's death. *See Rayford v. State*, 125 S.W.3d 521, 530 (Tex. Crim. App. 2003) (finding no error in the admission of autopsy photographs that showed pre-death injuries consistent with kidnapping theory); *Salazar v. State*, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001) (explaining that the autopsy photographs in a capital murder case showed the child's extensive internal injuries which could not have been caused in the manner defendant had explained to them). The controversies in the present case were how A.J.V. died and whether Proenza failed to feed A.J.V. or to seek medical care for him and, thus, caused his death.

Proenza argues that the photographs of A.J.V.'s internal organs were not necessary to aid the jury in determining the cause of death. Yet according to Dr. Farley's testimony, Exhibit 19 was a photograph of A.J.V.'s intestine "that you can actually see through." She explained that the intestine is "usually covered in yellow adipose tissue or fatty tissue." But in this case "[i]t's not covered with fat as we would get in—in other infants," and it is "a sign of malnutrition, severe malnutrition, because it's using the fat source of the body to—to compensate for the fact that it's not getting food . . . ." Regarding Exhibit 20, Dr. Farley testified that it was "an up-close picture of the brain" showing a "subarachnoid hemorrhage," most likely a sign of trauma. Although something happened

13

to the child's head, in Dr. Farley's opinion, "it did not cause the death of the child." She further explained that Exhibit 21 was the large and small intestine "after it was opened." Dr. Farley testified that although there is "usually a pasty material throughout the bowel," she found "almost nothing left in the intestine at all." The only thing she "actually found in the bowel was a pepper that was green, a little piece of pepper," as seen in Exhibit 22. Proenza claimed that A.J.V. was fed and that he took care of A.J.V. However, the photographs supported the medical examiner's explanation as to the cause of death being dehydration and malnutrition.

Based on the above, I would conclude that the photographs admitted as State Exhibits 19 through 22 were relevant to explain the State's theories of the case and were probative of disputed facts. *See* TEX. R. EVID. 401, 402. They were fully explained to the jury as part of Dr. Farley's examination of the alleged injury. And there were elements of each photograph, discussed above, that would have been "genuinely helpful to the jury in making its decision." *See Erazo*, 144 S.W.3d 487.

### 2. Unfair Prejudice

Having determined that the evidence was relevant, I turn to whether the danger of unfair prejudice substantially outweighed the probative value; in other words, whether "the emotional and prejudicial aspects [of the photographs] substantially outweigh the helpful aspects." *Id.* at 491–92; *see* TEX. R. EVID. 403.

Relying on *Prible*, Proenza argues that we should follow its holding that autopsy photographs of children's organs are unfairly prejudicial and should not be admitted. *See* 175 S.W.3d at 736. Proenza notes that, in *Prible*, the medical examiner testified that the cause of each child's death was smoke inhalation, which was supported by an autopsy

14

report; therefore, the photographs were not needed by the State. *Id.*; *see* TEX. R. EVID. 403 (excluding relevant evidence if its probative value is substantially outweighed by, among other things, the "needless presentation of cumulative evidence").

Proenza's reliance on *Prible* is misplaced. The appellant therein was charged with the deaths of the children's parents, not the deaths of the children. *Prible*, 175 S.W.3d at 726. And no one disputed that the children died of smoke inhalation, which was the ostensible purpose for the children's autopsy photographs being admitted. *Id.* at 736. Instead, the *Prible* Court concluded that

> the minimal probative value of the autopsy photographs [of the children], if any, was substantially outweighed by the danger of unfair prejudice, confusion of the issues—by unduly focusing the jury's attention upon the deaths of the children rather than the deaths of their parents for which [Prible] was charged—and needless presentation of cumulative evidence.

*Id.* Based on this reasoning, the *Prible* Court determined that "[t]he trial court abused its discretion in admitting the [autopsy photographs of the children] over appellant's [r]ule 403 objection." *Id.* The present case is distinguishable because Proenza complains of the admission of autopsy photographs of A.J.V., the child that he was accused of seriously injuring. And Proenza's only rule 403 objection was based on undue prejudice; i.e., that the exhibits would inflame the minds of the jury. *See* TEX. R. EVID. 403. Proenza did not object that the probative value of the autopsy photographs was substantially outweighed by the danger of confusing the issues or needlessly presenting cumulative evidence, as did the appellant in *Prible*. *See id.*; *Prible*, 175 S.W.3d at 736.

Of the four non-exclusive factors considered when examining a rule 403 challenge, I have already concluded that the autopsy photographs were relevant to explain the State's theories of the case and probative of disputed facts; thus, consideration of the first factor weighs against a finding of abuse of discretion. *See Shuffield*, 189 S.W.3d at 787;

15

*Montgomery*, 810 S.W.2d at 389–90; *see also* TEX. R. EVID. 402.  I have also concluded that there were elements of each photograph that would genuinely help "the jury in making its decision."  *See Erazo*, 144 S.W.3d 487.  And "[v]isual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions."  *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (en banc).  For these reasons, I further conclude that the State needed the autopsy photographs; therefore, consideration of the fourth factor also weighs against a finding of abuse of discretion.  *See Shuffield*, 189 S.W.3d at 787; *Montgomery*, 810 S.W.2d at 389–90.  As to the third factor, a review of the record reveals that the State needed little time to develop a foundation for introduction of the challenged photographs; this weighs also against a finding of abuse of discretion.  *See Shuffield*, 189 S.W.3d at 787; *Montgomery*, 810 S.W.2d at 389–90.

Proenza asserts that the admission of Exhibits 19 through 22 "would inflame the minds of the jury."  By his assertion, he is arguing that the second *Shuffield* factor weighs in favor of exclusion.  *See Shuffield*, 189 S.W.3d at 787.  The record contains 8½ x 11 color photocopies of the exhibits, but the record does not reflect the size of the originals.  *See id.*; *Prible*, 175 S.W.3d at 734; *Reese*, 33 S.W.3d at 241.  Although the photographs may have been unpleasant to view, they accurately represented the internal organs of the child as damaged by Proenza's fatal omissions.  *See Shuffield*, 189 S.W.3d at 787; *Prible*, 175 S.W.3d at 734; *Reese*, 33 S.W.3d at 241.  And while the photographs were graphic and reflected alterations of the organs due to autopsy procedures, I do not believe that they were likely to have created an emotional response that substantially outweighed the helpful aspects of the photographs.  *See Erazo*, 144 S.W.3d at 491–92; *see also*

16

*Casey*, 215 S.W.3d at 879–80, 883.  Instead, the prejudicial effect of the photographs, if any, did not substantially outweigh their probative value.  *See* TEX. R. EVID. 403; *see also Erazo*, 144 S.W.3d 487; *Shuffield*, 189 S.W.3d at 787; *Prible*, 175 S.W.3d at 734; *cf. Reese*, 33 S.W.3d at 240–44 (concluding that the probative value of photos of a murdered woman and her unborn child lying in a coffin was substantially outweighed by unfair prejudice).  A trial court does not abuse its discretion simply because it admits gruesome photos.  *Paredes v. State*, 129 S.W.3d 530, 540 (Tex. Crim. App. 2004); *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (en banc).  I would conclude that the trial court did not abuse its discretion when it admitted the State's Exhibits 19 through 22 into evidence; therefore, I would overrule Proenza's fourth issue.

### V. CONCLUSION

Because I would affirm the trial court's judgment, I respectfully dissent.

DORI CONTRERAS GARZA,
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of July, 2015.

17