**Nolan J. RODRIGUEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–81–00185–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 22, 1982.

Don W. King, Jr., Egon Tausch, San Antonio, for appellant.

Bill White, Dist. Atty., Steven Zauft, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and BASKIN, JJ.

## OPINION

CANTU, Justice.

Nolan J. Rodriguez appeals from a conviction of attempted capital murder based upon an unfavorable jury verdict. The trial court assessed punishment at twenty years' confinement in the Texas Department of Corrections. Sentence was cumulated under the provisions of Tex.Code Crim.Pro. Ann. art. 42.08 (Vernon 1979).

In six separate grounds of error, appellant challenges the sufficiency of the evidence to establish a specific intent to kill, the propriety of introducing evidence of three separate extraneous offenses, the admissibility of an oral confession, and the stacking of consecutive sentences.

We affirm, but this case approaches the limit to which a prosecutor may strain the patience of justice without incurring a reversal on the grounds of prosecutorial misconduct.

The facts viewed in the light most favorable to the jury verdict reflect the following events.

On June 1, 1978, at approximately three o'clock in the morning, in the northwest sector of Bexar County where the cities of San Antonio and Leon Valley adjoin, appellant and two companions, Scott Mills and William Douglas Beaver, became embroiled in an incident at a Jack-in-the-Box restaurant on Evers Road. Earlier that morning Elizabeth James, 15 years of age, and her 14 year old girl friend Elizabeth Mallory arrived at the Jack-in-the-Box with two young male companions. Their male companions were already intoxicated but still had four quart sized bottles of beer they no longer wanted. At the suggestion of their male friends, the two girls offered the bottles to appellant and his companions, who were also at the Jack-in-the-Box. One of appellant's companions responded by making a lewd sexual proposal, which the girls rejected.

Sometime later, the two girls left the Jack-in-the-Box alone, walking north on Evers Road. As they walked along the side of the road, appellant, Mills, and Beaver, apparently following behind, pulled up alongside in a 1970 green Malibu automobile driven by Mills. Again one of the car's occupants propositioned the girls and the girls refused. The car sped off and turned into a service station further up the road. James and Mallory became apprehensive and returned to the Jack-in-the-Box, where they saw two young men they recognized and asked them to accompany them home. The two, Barry Smith and Scott Harben, instead volunteered to drive them home in Smith's car. While the four were driving north on Evers Road, the girls pointed to three males standing alongside the road. Smith stopped his car by the threesome, who were subsequently identified as appellant, Mills and Beaver, and along with Harben, he questioned the three about their harrassment of the girls. Appellant pulled a sawed-off shotgun from behind his back, cocked it and pointed it at Harben. At the same instant Smith accelerated his vehicle in a swerving manner, and appellant discharged the firearm, the shot striking the vehicle's right rear tire. Smith managed to drive his car some distance to a Fargo's Restaurant, and Leon Valley police were summoned.

Leon Valley Police officer Jack Day responded to the call for a reported shooting, and while interviewing Smith, Harben, Mallory and James, saw appellant and his companions speed by in the 1970 green Malibu. The girls identified the occupants of the vehicle as the same three who had fired at them, and Officer Day began his pursuit of the fleeing vehicle. Officer Day displayed his emergency overhead lights and utilized his siren in chasing the green Malibu south toward San Antonio's Loop 410. During the early phase of the chase, the front passenger in the fleeing vehicle, later identified as appellant, leaned out the window, pointed a shotgun in the direction of Officer Day's pursuing vehicle, and discharged the shotgun twice in rapid succession, striking and damaging the front end of the patrol vehicle.

During the pursuit, which covered several miles along Loop 410, as many as ten law

enforcement vehicles joined the chase which reached speeds in excess of 120 miles per hour. The fleeing vehicle managed to elude road blocks set up by San Antonio police officers and came to a final stop many miles from the point of origin in Leon Valley.

Mills and Beaver were arrested immediately. Appellant, however, fled on foot and managed to elude police officers. Later that day appellant surrendered to law enforcement officers and made an oral confession directing officers to the area where he had abandoned the shotgun and outer clothing. The appellant also executed a written confession later in the day. Both Beaver and Mills executed written statements implicating appellant.

Officer Day testified unwaveringly that appellant aimed the shotgun at him and fired as he pursued appellant from four car lengths behind. According to Day there was no doubt in his mind that appellant intended to kill him when he fired the weapon.

Appellant, testifying in his own behalf, denied any intent to harm Officer Day. According to appellant, he was aiming at the officer's vehicle's front tire in an attempt to discourage the pursuit.

On rebuttal, the State called upon co-defendant Beaver,[1] who testified that appellant had stated during the chase that he was shooting at the pursuing officers. When told by Beaver and Mills to discard the shotgun, appellant allegedly responded by ordering them to "shut up" or he would shoot them.

Appellant argues on appeal that the physical evidence supports his testimony that he was not aiming at Officer Day, since the major damage to the police vehicle was to the area of the driver's side headlight, turn signal and front grille. Further testimony revealed damage to the overhead light lenses and to the protector over the loudspeaker located on top of the car. Appellant fur-

ther insists that his written confession, executed after a conflicting oral confession was given, supports his contention that he merely sought to shoot out the officer's tire.

Appellant recognizes that the shooting of a victim with a deadly weapon supports a finding of intent to kill. *Coleman v. State,* 542 S.W.2d 144 (Tex.Cr.App.1976). He urges us, however, to adopt a different rule because Officer Day did not suffer actual harm or death. We decline the invitation to do so.

Tex.Penal Code § 1.07(a)(11) (Vernon 1974) defines a deadly weapon as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

A sawed-off shotgun is a firearm and is by definition a deadly weapon. When death results from the use of a deadly weapon *per se,* the intent to kill may be inferred. *Baylor v. State,* 151 Tex.Cr.R. 365, 208 S.W.2d 558 (1948). This is so even though the defendant denies the specific intent to kill. *Giles v. State,* 617 S.W.2d 690 (Tex.Cr.App. 1981). Similarly, firing at one's intended victim, even if the firer misses, supports a finding of intent to kill.[2]

Appellant's denial of an intent to kill or to harm Officer Day presented an issue of fact for the jury, which it obviously resolved against appellant as was within its province, Tex.Code Crim.Pro.Ann. art. 38.04 (Vernon 1979). From all the facts developed in the case, the jury could and obviously did infer the specific intent to kill from the use of the sawed-off shotgun. The first ground of error is overruled.

In his second ground of error, appellant complains of alleged trial court error in the

---

1. The defense established before the jury that the charges against Beaver had been dismissed, although Beaver claimed they were still pending.

2. Intent to kill may be inferred from the use of a deadly weapon whether injury or death is sustained. *See Bell v. State,* 501 S.W.2d 137 (Tex.Cr.App.1973); *Hall v. State,* 418 S.W.2d 810 (Tex.Cr.App.1967).

admission, over objection, of references to an extraneous offense of conspiracy to commit aggravated robbery. Appellant asserts that because the prosecutor recognized that evidence on the issue of intent to kill was weak, the State embarked on a campaign of trying him as a criminal generally. He directs this court to various incidents during the trial in which the State called upon witnesses who testified to issues completely irrelevant to the case and created the impression that appellant was a known criminal figure. He acknowledges that reversible error is not shown, and we agree, noting that the record does not support preservation of any error in this regard. We further agree with appellant, because the record bears him out, that the prosecutor intentionally tested the limits of the trial court's patience in maintaining some semblance of fairness in its rulings on extraneous matters being presented before the jury. We are not prepared, however, to hold that all of the references to extraneous offenses were inadmissible.

In anticipation of the prosecutor's course of conduct, appellant had filed a motion in limine seeking to suppress any mention of a planned robbery which was expected to be elicited from police officer Day relating the events leading to appellant's subsequent oral confession. After a hearing outside the presence of the jury, the trial court held the oral confession admissible, including references to the alleged planned robbery at the Jack-in-the-Box. Over repeated objection, the prosecutor was permitted to elicit testimony about the planned robbery during the State's case in chief.

After the State rested its case, appellant took the stand to deny any intent to harm Officer Day. On cross-examination, the prosecutor immediately delved into the matter of the planned robbery and most of the cross-examination centered upon this topic. Following appellant's denial of any planned robbery, the State called co-defendant Beaver on rebuttal to again stress the planned robbery. At one point the trial court admonished the prosecutor that he did not wish to hear any more about a planned robbery. References to the planned robbery continued and formed a major portion of the jury argument.

■ The trial court's patience appeared strained when the prosecutor extended his inquiry from a planned robbery of the Jack-in-the-Box to a planned robbery and rape of the James and Mallory girls. In the examination of State's witness Beaver during rebuttal, the following transpired:

(PROSECUTOR)

Q: Well, tell me what you were walking back to the chicks for?

A: To rob them and rape them.

(Defense Attorney) Mr. King: Your Honor, we have the same objection which has already been sustained.

THE COURT: I sustain the objection. Mr. Burris, do you want me to declare a mistrial—is that what you want me to do?

Mr. Burris: Your Honor—

THE COURT: I don't want that mentioned anymore—I am going to instruct the jury to disregard that—

We agree that an accused may not be tried for some collateral crime or for being a criminal generally. *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975); *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr.App.1973). There are, however, several exceptions permitting the use of extraneous offenses. *See Albrecht v. State,* 486 S.W.2d 97 (Tex. Cr.App.1972).

■ The State appears to seriously contend that references to the alleged planned robbery were admissible as "res gestae" of the offense. The State relies on *Calverley v. State,* 511 S.W.2d 60 (Tex.Cr.App.1974); *Miles v. State,* 488 S.W.2d 790 (Tex.Cr.App. 1973); *Moore v. State,* 440 S.W.2d 643 (Tex. Cr.App.1969); *Hill v. State,* 420 S.W.2d 408 (Tex.Cr.App.1967); and *Heath v. State,* 375 S.W.2d 909 (Tex.Cr.App.1964). In the alternative, the State argues that the evidence was admissible under the exception allowing proof of extraneous offenses to prove intent. *See Jamerson v. State,* 550 S.W.2d 287 (Tex.Cr.App.1977); *Grayson v. State,* 481 S.W.2d 859 (Tex.Cr.App.1972); *Crestfield v. State,* 471 S.W.2d 50 (Tex.Cr.App.

1971). Finally, the State contends that the evidence was admissible under the theory that statements or acts of a co-conspirator are admissible as an exception to the hearsay rule. Reliance is had upon *Rodriguez v. State,* 552 S.W.2d 451 (Tex.Cr.App.1977); *Morgan v. State,* 519 S.W.2d 449 (Tex.Cr.App.1975); *Helms v. State,* 493 S.W.2d 227 (Tex.Cr.App.1973).

We doubt the soundness of any of the State's theories. It cannot seriously be contended that an oral statement made while under custodial interrogation but leading to the fruits of the crime is one arising as *res gestae* of the offense. This is particularly so since any thought of proceeding with the planned robbery was abandoned significantly prior to the crime actually charged.

Nor can it seriously be argued that intent to rob is an essential element of the State's case in an attempted capital murder unrelated to the planned robbery. Even so, we have held that the intent to kill, which is the only intent before us, was inferrable from the act itself; therefore, the intent exception is unavailable. As for the conspiracy theory, a statement related by a police officer and attributable to appellant is hardly the statement of a co-conspirator. The initial mention by Officer Day following his testimony on the oral confession was not admissible as evidence of a conspiracy and we do not think that a subsequent reference to the planned robbery by co-defendant Beaver during rebuttal properly invoked the conspiracy theory.

It is apparent that the prosecutor delved into the planned robbery on cross-examination of appellant for the sole purpose of later impeaching appellant's expected answer.

■ While great latitude is allowed in cross-examination in attempts to discredit the witness, the witness may not be cross-examined as to any fact that is collateral and irrelevant to the issue merely for the purpose of laying a predicate for the introduction of independent evidence to impeach him by a showing that, as to the matter embraced in the question, the witness has answered falsely. *Bates v. State,* 587

S.W.2d 121 (Tex.Cr.App.1979); *Hoffman v. State,* 514 S.W.2d 248 (Tex.Cr.App.1974).

While we question the propriety of rebuttal testimony that does not rebut appellant's direct testimony but simply impeaches on collateral issues injected into the case by the State, we find no error for the following reasons.

■ We think that the references to a planned robbery were admissible by virtue of the oral confession leading to the fruits of the crime. *Hayes v. State,* 502 S.W.2d 158 (Tex.Cr.App.1973); *McClure v. State,* 100 Tex.Cr.R. 545, 272 S.W. 157 (1925). Whether the remaining portions of the oral confession are admissible depends on how pertinent they are to the main fact at issue. *Alexander v. State,* 151 Tex.Cr.R. 235, 207 S.W.2d 881 (1948); *Martinez v. State,* 138 Tex.Cr.R. 51, 134 S.W.2d 276 (1940).

During cross-examination of appellant, the prosecutor probed repeatedly into the question of the alleged planned robbery without any objection, thus permitting appellant to deny the planned act. Only once was a belated objection offered. Again, on cross-examination of co-defendant Beaver, appellant, while complaining of references to the planned robbery on direct examination, elected voluntarily to explore the subject matter in an attempt to shift responsibility for the idea of the planned robbery to Beaver.

During the arguments to the jury, numerous references to the planned robbery and other extraneous offenses were made by both parties without a single objection. In light of the action and inaction by appellant subsequent to his initial objection to the references to a planned robbery, we hold under the doctrine of curative admissibility that error, if any, was not preserved. *Autry v. State,* 159 Tex.Cr.R. 419, 264 S.W.2d 735 (1954).

■ By his third ground of error, appellant complains of the trial court's refusal to grant a mistrial following a reference to an alleged rape. Appellant directs us to several instances in the record in which the word

"rape" was mentioned, allegedly implying that appellant sought to harm the two young girls in addition to engaging in other conduct of a "hell raising"[3] nature. He concedes that a trial court instruction to the jury to disregard generally cures the harm sustained. Such an instruction was immediately given by the trial court as soon as requested. Harm, if any, was removed by the prompt instruction. *McCarter v. State,* 527 S.W.2d 296 (Tex.Cr.App.1975); *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App.1974).

As noted before, during the closing arguments to the jury, the prosecutor made numerous references to the word "rape" or the expression "harm those girls" without objection by appellant. Our examination of the instances complained of an appeal, and those not complained of, convinces us that the more serious of the instances did not evoke a sign of dissatisfaction from appellant, much less a request for relief. He cannot have it both ways and, accordingly, the same evidence being admitted without objection renders any prior error harmless. *Autry v. State, supra; Alvarez v. State, supra.*

■ Appellant next complains of trial court error in failing to grant a mistrial following the introduction of evidence of an extraneous offense. Appellant candidly admits that reversible error is not shown by the incident and informs us that he does not rely upon the theory of cumulative error. It is appellant's apparent intention to simply convince us of the prosecutor's unmistakable campaign to deprive appellant of a fair trial by adjudicating him a criminal generally.

We agree with appellant that the State's impeachment of him during cross-examination with a misdemeanor conviction not involving moral turpitude[4] was uncalled for. *Pippen v. State,* 126 Tex.Cr.R. 163, 70

S.W.2d 598 (1934). As recognized by appellant, the prompt jury admonition by the trial court served to cure the error. *Guerrero v. State,* 507 S.W.2d 765 (Tex.Cr.App.1974).

■ Appellant next contends that the trial court erred in admitting, over timely objection, an oral confession which conflicted with his written confession and which violated Tex.Code Crim.Pro.Ann. art. 38.22 (Vernon 1979). A hearing outside the presence of the jury revealed that appellant, after being timely given his *Miranda*[5] warning, elected to make an oral statement admitting the entire episode, including his part in shooting at the pursuing police officer. As a result of the statement, appellant led peace officers to the scene where he had abandoned the weapon and the outer clothing he had removed while effectuating his escape. Not until some time later did appellant execute a written confession which was substantially the same and included references to the discarded weapon and clothing. The only material differences between the confessions appear to be appellant's affirmative statement in the written confession that he was not attempting to shoot at the pursuing officer, but only at his car. In his oral confession he also admitted extraneous offenses not mentioned in the written confession.

Appellant does not appear to complain about the fruits recovered as a result of the oral confession, since he recognizes that they would have been recovered in any event as a result of the written confession. He further concedes that the weapon and clothing were never at issue, because of his admitted participation in the shooting and flight to escape. His argument revolves around the contested issue of intent. His sole basis on appeal is the propriety of admitting an oral confession in conflict with a written one.

---

3. Co-defendant Beaver testified that he, appellant and Mills were out to "raise hell" immediately preceding the incidents leading up to the shootings.

4. The complained of misdemeanor conviction was apparently a simple assault, which appellant initially denied. No objection to the ques-

tion was made by appellant's counsel until the second reference minutes later. Error, if any, was waived. Appellant voluntarily admitted to other prior convictions and unadjudicated extraneous offenses.

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The State elected not to offer the written confession for obvious reasons, not wishing to be bound by the exculpatory portions. Appellant did not testify at the hearing to determine the voluntariness of the oral confession, nor did he deny making the oral statement. In fact, other than referring to the oral statement as "alleged," appellant does not in his brief deny having made it.

The written confession was read to the jury by defense counsel after evidence of the oral confession had been received. The admissibility of the oral confession was clearly shown insofar as it complied with the provisions of Tex.Code Crim.Pro.Ann. art. 38.22, § 3(c) (Vernon 1977).[6] *McGilvery v. State,* 533 S.W.2d 24 (Tex.Cr.App. 1976).

The State was not bound to introduce the written confession and therefore the conflict, if any, did not exist until created by appellant. Even so, the conflict does not render the earlier oral confession invalid, particularly when the making of the oral confession is not denied. Appellant's fifth ground of error is overruled.

By his final ground of error, the appellant asserts that the trial court erred in "stacking" his sentence in this case upon a sentence in Cause No. 78–CR–1748. Cause No. 78–CR–1748 is a possession of a prohibited weapon case arising out of the same transaction as the instant offense. The instant cause was numbered 78–CR–1749 in the trial court. Both convictions are before us on appeal and, therefore, both records are available to us for review.

Appellant pleaded guilty in Cause No. 78–CR–1748 on December 4, 1978, and, after waiving statutory time to file a motion for new trial or in arrest of judgment, accepted sentencing and executed a waiver of appeal. Under a plea bargaining arrangement, appellant was assessed a term of ten years' confinement in the Texas De-

partment of Corrections. According to the court reporter's notes appellant was credited for time served from June 1, 1978.[7]

Appellant was already on probation in trial Cause No. 76–CR–2200–A and a motion to revoke probation was pending in that case. After he entered a plea of "true" to the motion charging possession of a prohibited weapon, appellant's probation was revoked on December 4, 1978.

Immediately after entering an order revoking probation in Cause No. 76–CR–2200–A and pronouncing sentence, the trial court stated,

THE COURT: Mr. Yoes, on the capital murder case—make a note on that jacket—it is very important to remind me about this that when the mandate comes back and if this case is affirmed, then, I am going to stack it on the first sentence so that they will run consecutively—that is when the mandate comes back.

Mr. Yoes: I think you have to do that now, Your Honor—I think you have to call him back.

Appellant was returned to the court and the following transpired,

THE COURT: All right. Case No. 78–CR–1749, that is the one that is on appeal, correct?

(Defense Attorney) Mr. King: Yes, sir.

THE COURT: Now, therefore, the sentence—the punishment assessed by the court in 78–CR–1749 will run consecutively with the sentence assessed in the other case which is 78–CR–1748—all right. Now give me the other one.

Mr. Yoes: All right.

THE COURT: And, the punishment assessed in 76–CR–2200–A will run concurrent with the other sentences. . . .

Appellant contends that the written sentence making reference to "stacking" was

---

**6.** Amended by Acts 1979 and Acts 1981, but the pertinent portions remain unchanged.

**7.** Appellant was sentenced in all three cases on the same day but the court reporter's notes do not clearly chronicle the sequence of events. Nevertheless, the notes are capable of support-

ing the conclusion that sentencing was first had on Cause No. 78–CR–1748 following the guilty plea, then in Cause No. 78–CR–1749 following overruling of pending motions and finally in Cause No. 76–CR–2200–A following the order revoking probation.

prepared after he gave notice of appeal, without appellant's having received prior notice in the courtroom. Thus, appellant reasons that the written sentence does not conform to the trial court's pronouncement. Appellant's main argument appears to arise from the trial court's comments, "The sentence will be dated back to June 1, 1978." He now argues that the trial court meant that the sentence would begin to run from June 1, 1978, and since the sentence in Cause No. 78–CR–1748 was also to be dated back to June 1, 1978, appellant reasons the court meant to assess concurrent sentences. Appellant also contends that the sentence was changed in retaliation for his giving notice of appeal and relies upon *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Alvarez v. State,* 536 S.W.2d 357 (Tex.Cr.App.1976) *cert. denied* 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292.

Although the docket sheet in the instant cause (78–CR–1749) recites that appellant's sentence is to run consecutively with Cause No. 78–CR–1748, such pronouncement was not made at the time of sentencing in the instant case but only after all cases were disposed of. The written sentences and commitment notices, however, positively indicate that the sentences will run consecutively.

■■■■ It is well settled that where a trial judge does not order that two sentences in two different prosecutions shall be cumulative, the terms of imprisonment automatically run concurrently. *Gordon v. State,* 575 S.W.2d 529 (Tex.Cr.App.1979). But there is no "right" to a concurrent sentence; whether punishment will run concurrently or cumulatively is within the discretion of the trial court. Tex.Code Crim.Pro.Ann. art. 42.08 (Vernon 1979); *Carney v. State,* 573 S.W.2d 24 (Tex.Cr.App. 1978). In the instant case, the sentences in all three cases were not handled simultaneously but the records indicate that they were handled significantly close in time to each other to constitute a continuous event.

■■ We do not accept appellant's argument that the sentence was changed in retaliation for his giving notice of appeal. It is true that the trial court made no mention of the cumulation of sentences at the time the sentences in Cause Nos. 78–CR–1748 and 78–CR–1749 were pronounced. The record, however, clearly evinces the trial court's intention, albeit under an erroneous construction of the cumulation statute, to cumulate the sentences. We do not construe the trial court's conduct as vindictiveness nor as an attempt to deter appellant from exercising his right to appellate review of any of his convictions. To the contrary, the trial court appointed additional counsel to assist appellant on appeal and permitted appellate review in Cause No. 78–CR–1748, even though appellant had executed a written waiver of appeal. *North Carolina v. Pearce, supra* and *Alvarez v. State, supra,* relied upon by appellant, address a more narrow issue not presently before us and are, therefore, not controlling.

■■ The remaining argument that the trial court intended concurrent sentences because of his references to dating them back to June 1, 1978, is likewise without support in the record. The same contention has been rejected in *Ex parte Griffith,* 457 S.W.2d 60 (Tex.Cr.App.1970) and *Ex parte Isom,* 168 Tex.Cr.R. 434, 331 S.W.2d 753 (1959). In *Griffith* it was recognized that a trial court has statutory authority to grant credit on the sentence when imposed for all or any part of presentence custody. Since *Griffith,* the statute, which had given discretion to trial courts to grant jail-time credit, has been amended to make crediting of jail-time mandatory. Tex.Code Crim. Pro.Ann. art. 42.03 (Vernon 1979).

When such authority is exercised, the date of the sentence does not change, even though the procedure is frequently referred to as "back dating" the sentence. This is so because the sentence is never dated back, but the defendant is merely given credit from the date of confinement to the date of the sentence, with the date of the imposition of the sentence remaining the same.

This is precisely what the trial court intended in the instant case, and since the

sentence fails to recite such credit, although clearly supported by the trial proceedings, the sentence is reformed to show that appellant shall be credited for time served in jail from June 1, 1978 to the date of sentencing. *Acker v. State,* 477 S.W.2d 288 (Tex.Cr.App.1972); *Asay v. State,* 456 S.W.2d 903 (Tex.Cr.App.1970); Tex.Code Crim.Pro.Ann. art. 44.24(b).

Although we have determined that no reversible error is presented in this case, our duty does not end there. We feel compelled to make a further observation. When, as in this case, the prosecutor seeks to secure conviction by whatever tactics the "traffic will bear," because the evidence of culpability otherwise may be weak, justice is seriously disserved. It is highly unprofessional conduct, whether error is preserved or, as here, waived. The saving grace of waiver does not make such conduct any less reprehensible.

Further, judicial acquiescence in such misconduct only marks it with a silent seal of approval, making it the acceptable norm for all other prosecutors. In the face of this kind of impropriety, trial judges must not fear to move decisively in using their admonishment and contempt powers to assure that the proper ends of justice and the integrity of our legal system are preserved.

In all other respects, in the absence of reversible error, the judgment of conviction is affirmed as reformed.