OPINION




No. 04-05-00322-CR



Anthony RAMIREZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 81st Judicial District Court, Wilson County, Texas


Trial Court No. 04-05-0079-CRW


Honorable Stella Saxon, Judge Presiding



Opinion by: Rebecca Simmons, Justice


Sitting: Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice


Delivered and Filed: March 7, 2007


APPELLANT'S MOTION FOR REHEARING DENIED; AFFIRMED 

 On October 4, 2006, we issued an opinion and judgment affirming the decision of the trial
court. Appellant, Anthony Ramirez, has filed a motion for rehearing. We deny appellant's motion;
however, we withdraw our opinion and judgment of October 4, 2006, and substitute this opinion and
judgment in their stead.

 In a two paragraph indictment, Appellant Anthony Ramirez was charged with the murder of
Paul Guajardo under Sections 19.02(b)(1) and 19.02(b)(2) of the Texas Penal Code. Tex. Pen.
Code Ann. §§ 19.02 (b)(1)-(2) (Vernon 2003). The jury returned a verdict finding Ramirez "guilty
of murder, as charged in the indictment" and sentenced Ramirez to twenty-eight years confinement
in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the
amount of $10,000.00. Ramirez now contends that the evidence was legally and factually
insufficient to establish that he acted with the requisite intent or knowledge. Additionally, Ramirez
contends that his trial counsel was ineffective by making statements to the jury that lowered the
State's burden of proof.

Legal and Factual Sufficiency 

 In points of error one and two, Appellant Ramirez complains that the evidence was legally
and factually insufficient to prove the requisite culpable mental state for murder. 

 A. Standard of Review

 As in most cases, when there is no direct evidence of a defendant's intent, the State must 
establish the necessary intent by circumstantial evidence. See Dillon v. State, 574 S.W.2d 92, 94
(Tex. Crim. App. 1978). In a legal-sufficiency review, we view the evidence in the light most
favorable to the verdict to determine whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The standard is the same for both direct and
circumstantial evidence. Sutherlin v. State, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). In
determining the legal sufficiency of the evidence, an appellant's intent must be presumed, in favor
of the prosecution, even without affirmative proof on the record that the trier of fact resolved any
such conflict. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

 In a factual sufficiency review, we consider all the evidence in a neutral light and only reverse
if: (1) the evidence is so weak as to make the verdict clearly wrong or manifestly unjust, or (2) the
verdict is against the great weight and preponderance of the evidence. Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)); Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We must, however, avoid
substituting our judgment for that of the fact-finder, the sole judge of the weight and credibility of
witness testimony. Johnson, 23 S.W.3d at 7. The standard of review for cases involving
circumstantial evidence is the same as when a case is comprised of direct evidence. Kutzner v. State,
994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

 B. Required Mental State

 The Penal Code defines murder as intentionally or knowingly causing the death of an
individual. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 2003). A person commits the offense of
murder under Section 19.02(b)(2) if he intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual. Tex. Pen. Code Ann.
§ 19.02(b)(2) (Vernon 2003). "Serious bodily injury" is bodily injury that creates a substantial risk
of death or causes death, serious permanent disfigurement, or protracted loss or impairment of the
function of any "bodily member or organ." Tex. Pen. Code Ann. § 1.07(a)(46) (Vernon Supp.
2004-05); Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). Appellant contends the
evidence was insufficient to support the requisite mental state. The record reflects otherwise.

 On November 14, 2003, Appellant Anthony Ramirez and his friend Paul Guajardo spent the
day eating, drinking, listening to music and doing "lines of crank." Somewhere between 3:00 and
4:00 p.m., Ramirez and Guajardo arrived at Ramirez's grandmother's residence. According to
Ramirez, he possessed a single-action .357 revolver and as Guajardo "twirled" the loaded firearm
and spun it around, the firearm discharged and hit Guajardo. Without contacting any medical or
emergency service, Ramirez dragged Guajardo through the house and into his vehicle. At
approximately 4:50 p.m., Ramirez delivered Guajardo to the Wilson County Hospital's emergency
room where Guajardo was pronounced dead approximately one hour later. Ramirez informed
hospital personnel that Guajardo had been shot on a dirt road and then, over the objection of hospital
personnel, Ramirez left the hospital. 

 According to the record, Ramirez went to Guajardo's residence where he met Guajardo's
brother. Ramirez informed Guajardo's brother that Guajardo had been shot while they were cruising
around town. Thereafter, Ramirez went to a low water crossing area, known as "The Bud" where
he started calling his friends in an attempt to help him dispose of his vehicle and obtain a ride away
from the clearing in which he left his vehicle. Additionally, while at the Bud, Ramirez unloaded the
bullets from the firearm and threw them into the river.

 At approximately 11:00 p.m., Ramirez and his attorney went to the Wilson County Police
Department where Ramirez gave officers a third version of the incident, which he described as an
unfortunate accident. Ramirez claimed that Guajardo grabbed the firearm, with his non-dominant
hand, and was "twirling" it around when the firearm discharged. This version, however, contradicted 
the forensic evidence. Specifically, the medical examiner's testimony was that the gunshot residue,
the tattooing on the body and the angle of the wound all indicated a homicide and not a self-inflicted
wound.

 In addition to the forensic evidence, the State highlighted several discrepancies in Ramirez's
story, including: the minimal blood on his shirt was dried and crusted by the time he arrived at the
hospital; while Guajardo was presumably bleeding to death in the vehicle, Ramirez took the
necessary time to go back into the house to retrieve the firearm and locate the shell casing in
question; Ramirez's failure to call police or the hospital, although he had a cell phone in his
possession; the inconsistent stories Ramirez told about the incident--to the hospital, to the family
and to the officers; the fact that Ramirez left the hospital when emergency personnel asked him to
stay; and finally, an unexplained bag of methamphetamine apparently placed on Guajardo's body. 
Oddly, Ramirez kept the shell casing from the bullet that killed Guajardo, even through changes of
clothes and a shower. As he offered the shell casing to the officer, Ramirez stated "I got something
you probably want to see but I want you to promise I can get it back . . . I want it back." 

 The jury was charged under Sections 19.02(b)(1) and 19.02(b)(2) of the Texas Penal Code,
including both intentionally causing the death or intending to cause serious bodily injury and
committing an act clearly dangerous to human life. Taking into consideration Ramirez's actions and
conduct, a rational jury could have reasonably inferred that Ramirez either intended to shoot and kill
Guajardo or that Ramirez intended to cause serious bodily injury to Guajardo and committed an act
clearly dangerous to human life. West v. State, 846 S.W.2d 912, 915 (Tex. App.--Beaumont 1993,
pet. ref'd).

Analysis

 Intent is a question of fact and therefore within the sole purview of the jury for which the
jury may rely on its collective common sense and apply common knowledge and experience. Brown
v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003); Rodriguez v. State, 90 S.W.3d 340, 355
(Tex. App.--El Paso 2001, pet. ref'd). Additionally, intent may be inferred from the circumstantial
evidence surrounding the incident including the acts, words and conduct of the accused. Patrick v.
State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "The specific intent to kill may be inferred
from the use of a deadly weapon." Godsey v. State, 719 S.W.2d 578, 580-81 (Tex. Crim. App.
1986). 

 Importantly, however, to commit murder under Section 19.02(b)(2) the intent to kill is not
required. See Medina v. State, 7 S.W.3d 633, 638 n.4 (Tex. Crim. App. 1999). It is sufficient to
show only the intent to cause serious bodily injury and commit a clearly dangerous act. Rodriguez
v. State, 146 S.W.3d 674, 676 n.3 (Tex. Crim. App. 2004); Forest v. State, 989 S.W.2d 365, 368
(Tex. Crim. App. 1999) (holding that firing a gun in the direction of an individual is an act clearly
dangerous to human life); Goodin v. State, 726 S.W.2d 956, 959 (Tex. App.Fort Worth 1987),
aff'd, 750 S.W.2d 789 (Tex. Crim. App. 1988) (finding intent to cause serious bodily injury from
defendant's admission that he pointed a gun at victim and pulled trigger). 

 The jury was free to accept or reject the testimony of any witness and evidently chose to
believe the State's witnesses, and we remain mindful of such findings. Watson; 204 S.W.3d at 414,
citing Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Flanagan v. State, 675 S.W.2d
734, 746 (Tex. Crim. App. 1984); Rodriguez v. State, 644 S.W.2d 200, 203 (Tex. App.--San
Antonio 1982, no pet.) (denial of intent presented fact issue within the purview of the jury to
resolve). Moreover, intent may also be inferred from circumstantial evidence such as the acts,
words, and conduct of the accused. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). 
When a defendant's version of the facts conflict with other witnesses' testimony or other evidence,
it is the jury's prerogative to draw reasonable inferences from the evidence, and to judge the
credibility of the witnesses and the weight to be given their testimony. See Jones v. State, 944
S.W.2d 642, 647-49 (Tex. Crim. App. 1996). As such, Ramirez's argument that the shooting was
not intentional is viewed in light of not only his testimony, but also his actions following the
incident, his multiple statements and the forensic evidence. See Washington v. State, 2002 WL
31863770, *2 (Tex. App.--San Antonio 2002, pet. ref'd, untimely filed). Because there was some
evidence to support the jury's finding that Ramirez had the required mental state, we conclude that
the evidence was legally sufficient to support the conviction under Sections 19.02(b)(1) or (2). 
Jackson, 443 U.S. at 319; Watson, 204 S.W.3d at 414-15; see also Sanders v. State, 119 S.W.3d 818,
820-21 (Tex. Crim. App. 2003). Moreover, when all of the evidence is viewed neutrally, the State's
proof of Ramirez's culpable mental state is not too weak to support guilt beyond a reasonable doubt,
nor is the weight of the contrary evidence strong enough that the State could not have met its burden
of proof. Zulani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003). Ramirez's first and
second points of error are overruled.

Ineffective Assistance of Counsel

 In his third point of error, Ramirez argues that trial counsel rendered ineffective assistance
of counsel by lessening the State's burden of proof. During opening and closing arguments, counsel
made statements regarding his approach to the case, including "what we're going to have to do with
[defendant's] statement, we believe, is go through each one of the things and prove how it could
have happened or how it did happen that way" and "I said if anyone thinks that we don't have to
meet our burden, there's something wrong. We had to come in and prove up our case . . . to prove
that what he said happened." Ramirez believes that counsel's statements not only alleviated the
State's burden of proof but assumed the burden of proving Ramirez's innocence. 

 A. Standard of Review

 The standard of review for evaluating claims of ineffective assistance of counsel is set forth
in Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to prevail on a claim of ineffective
assistance of counsel, an appellant must first demonstrate that counsel's performance was deficient,
that being the lawyer made errors so serious that he was not functioning as the "counsel" guaranteed
by the Sixth Amendment, and second, make a showing of prejudice, or that counsel's errors were
so serious that there exists a reasonable probability that, but for counsel's errors, the result of the
proceedings would have been different. Id. at 694; see also Hernandez v. State, 726 S.W.2d 53, 55
(Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence
in the outcome. See Strickland, 466 U.S. at 694; Butler v. State, 716 S.W.2d 48, 54 (Tex. Crim.
App. 1986). The failure to satisfy either prong of Strickland negates an appellate court's need to
consider the other prong. Strickland, 466 U.S. at 697. 

 It is the defendant's burden to prove ineffective assistance of counsel and the same must be
firmly supported by the record. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996),
overruled on other grounds, Mosely v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998). When
assessing appellant's claims, we presume counsel's actions and decisions were reasonably
professional and were motivated by sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771-72
(Tex. Crim. App. 1994). It is the Appellant that bears the burden to rebut this presumption. Id. 

 When the record is silent as to the reasoning and strategy upon which his trial counsel may
have relied, as it is in this case, we may not speculate about the reasoning that counsel may have
employed and whether that reasoning was faulty. Id. Instead, an appellate court presumes trial
counsel had a plausible reason for his actions and thus, we will not indulge in speculation to find trial
counsel's actions ineffective. Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

 B. Analysis

 A review of the record reveals that counsel was a strong advocate for his client and adhered
to a strategy of accident and lack of intent. Counsel stressed that the defense was up-front and
forthcoming and that the evidence substantiated Ramirez's version of the events, as opposed to the
State's continuous hypotheticals. Counsel could have made his comments of having to prove
Rodriguez's statements accurate in view of the numerous other explanations that he offered which
were presented to the jury. Such an approach can be part of a sound trial strategy. See, e.g., Bone
v. State, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002); Hathorn v. State, 848 S.W.2d 101, 118-20
(Tex. Crim. App. 1992).

 Moreover, Ramirez points to the two instances wherein counsel uses the word burden in an
attempt to talk about showing the jury what really happened. Yet, he presents no evidence to rebut
the presumption that trial counsel's actions were the result of reasonable strategic decisions. Further,
the jury was specifically instructed by the trial court that "the law does not require a defendant to
prove his innocence or produce any evidence" and "the prosecution has the burden of proving the
defendant guilty." From this record, it is reasonable to conclude that there were legitimate and
professionally sound reasons for trial counsel's conduct. Ramirez has failed to present any evidence
to rebut the presumption that his counsel's actions conformed with sound trial strategy. We therefore
overrule Ramirez's third point of error. 

Conclusion 

 Having overruled all of Ramirez's points of error, we affirm the judgment of the trial court. 


 Rebecca Simmons, Justice


Publish