

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00402-CR

Derrick **WOOLRIDGE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR9661
Honorable Sid L. Harle, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:   Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  February 19, 2014

AFFIRMED

Derek Woolridge appeals his conviction for aggravated robbery, arguing that he received

ineffective assistance of counsel at trial, and that the evidence is insufficient to support the jury's

verdict.  We affirm the judgment of the trial court.

### BACKGROUND

After shopping at North Star Mall, Tammie and Donald "Don" Morgan returned to their

car in the parking garage.  Tammie was driving and Don was in the passenger's seat.  Before they

could leave, someone opened the passenger's side door.  Don saw a man kneeling on the sideboard

holding a sawed off shotgun. Tammie heard a voice, and looked up to see a black man with a thin moustache and sawed off shotgun get into the car. He said, "if you want to live, give me everything you've got." Don described the man as black, wearing a dark-colored hoodie, and having "nappy" hair. Tammie saw the man looking at her cell phone and she tried to remove it from the car charger to give to him. While she tried to get the phone, the man pointed the gun directly at her. Don began pushing the shotgun away so that it was not pointed at Tammie, and tried to shove the man and the gun out of the car. During the struggle, Don was shot in the foot. The man ran off, and Tammie saw his face. Don was bleeding profusely and passed out; Tammie drove around the mall looking for help. Both Tammie and Don testified that they feared for their lives.

Don was transported to Brooke Army Medical Center where he underwent reconstructive surgery. Photographs of Don's injured foot, which was permanently disfigured, were admitted without objection. Tammie gave a statement to police, along with her description of the perpetrator. Security video footage showed a man wearing a white undershirt, blue shirt, and socks with sandals leaving the mall and going to a nearby bus stop. Police traced the suspect, Derrick Woolridge, to a bus terminal, where he was found the next day. Woolridge was wearing the same sandals with socks, belt, bracelet, and Mardi Gras beads that he was wearing in the video footage. Woolridge was arrested and taken to the police station where he was interrogated.

While in custody, Woolridge answered questioning by law enforcement and initially denied any involvement in the incident. He gave police his girlfriend's phone number, and she was brought to the station for questioning. Woolridge became upset that his girlfriend had been brought to the station, and offered to tell police where items relating to the robbery were located. Police later found some clothing, the sawed off shotgun, and a gym bag at the location Woolridge told them about.

A blood swab was taken from the sandals Woolridge wore to the police station. The sandal swab was compared to a DNA swab taken from Don Morgan. A comparison of the two swabs showed that Don Morgan could not be excluded as the donor of the DNA found on Woolridge's sandal; in fact, mathematically-speaking, it was almost certain that it was Don Morgan's blood on Woolridge's sandal.

Woolridge's co-worker, Robert Gonzales, saw Woolridge the night of the robbery near North Star Mall carrying a duffel bag. Gonzales identified Woolridge from the security video, and recognized his unique sandals. Woolridge's girlfriend also identified Woolridge as the person in the video.

The jury found Woolridge guilty of two counts of aggravated robbery as charged in the indictment. After pleading true to a felony repeater enhancement, the trial court sentenced Woolridge to confinement for a term of life.

**DISCUSSION**

On appeal, Wooldridge argues that he received ineffective assistance of counsel at trial and that the evidence is insufficient to support his conviction.

*Ineffective Assistance of Counsel*

In three issues, Woolridge argues his robbery conviction should be reversed for ineffective assistance of counsel because counsel failed to: (1) file a motion to suppress evidence obtained without *Miranda* warnings; (2) object to the lack of a transfer order; and (3) file any pretrial motions, including motions for discovery.

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland* requires a two-step analysis: a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a reasonable probability

that the result of the proceedings would have been different. *Id*. at 687-94; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance is within the wide range of reasonable professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482-83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. Woolridge has the burden to establish both prongs of the *Strickland* test by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Additionally, allegations of ineffectiveness of counsel must be firmly rooted in the record. *Thompson*, 9 S.W.3d at 814; *Bone v. State*, 77 S.W.3d 828, 835 & n.13 (Tex. Crim. App. 2002). When the record is silent, we may not speculate to find trial counsel ineffective. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined, and will not conclude that the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id*.

### *Evidence Obtained without* **Miranda** *Warning*

Woolridge first contends that he was arrested and interrogated without *Miranda*[1] warnings, and therefore all evidence obtained as a result of the interrogation, specifically, the sawed off

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

shotgun, hoodie, blue shirt, and duffel bag, was inadmissible. He further argues that trial counsel was deficient in failing to file a motion to suppress, failing to request a *Jackson-Denno*[2] hearing, and failing to object to the evidence derived from Woolridge's "non-Mirandized" statements. An appellant claiming ineffective assistance for failure to file a motion to suppress is required to prove that the motion would have been granted. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *LaFleur v. State*, 79 S.W.3d 129, 137 (Tex. App.—Texarkana 2002, no pet.). The record before us, however, fails to affirmatively reflect that Woolridge did not receive his *Miranda* warnings. Thus, Woolridge has failed to establish that had a motion to suppress been filed, it would have been granted. *See Jackson*, 973 S.W.2d at 957; *see also Thompson*, 9 S.W.3d at 814 (claims of ineffective assistance must be firmly founded in the record).

Similarly, the record also fails to show that Woolridge's statements were not freely given because of coercion or some other specific reason, thus raising the issue of voluntariness. Woolridge did not testify. One witness, Detective Justin Good, testified that Woolridge, while making several phone calls on a phone located in the interrogation room, said he "told me he did it so he could use the phone." On appeal, Woolridge has not presented a sufficient record to show that the trial court would have committed error in overruling an objection to the admission of his statements as being involuntarily given, or that a *Jackson-Denno* hearing would have been successful. *See Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996) (noting *Jackson v. Denno*'s due process concerns are only raised when it is alleged that the confession was not freely given); *Hernandez v. State*, No. 04-00-00151-CR, 2000 WL 1727098, at *3 (Tex. App.—San Antonio Nov. 22, 2000, no pet.) (mem. op., not designated for publication) (holding counsel not ineffective for failing to suppress written confession where there was no allegation that statement

---

[2] *Jackson v. Denno*, 378 U.S. 368 (1964).

was involuntarily given). Accordingly, we cannot conclude that counsel was ineffective in this regard.

### Transfer Order

Wooldridge next argues that counsel was ineffective in failing to timely object to the lack of a transfer order. The indictment was filed and returned to the 379th Judicial District Court, but the trial, including sentencing, was conducted in the 226th Judicial District Court.

We disagree that a transfer order was required in this instance. The record does not support Woolridge's contention that the case was transferred to the 226th Judicial District Court. Rather, the record reveals that the Honorable Sid L. Harle, presiding judge of the 226th Judicial District Court, was sitting for the 379th Judicial District Court, as authorized by the Texas Constitution. "[T]he District Judges may exchange districts, or hold courts for each other when they may deem it expedient." TEX. CONST. art. V, § 11; *Ex parte Holmes*, 754 S.W.2d 676, 680 (Tex. Crim. App. 1988). Although the reporter's record states that the proceedings were conducted in the 226th Judicial District Court, the judgments are from the 379th District Court. Both judgments are signed by Judge Harle and contain a stamp under his signature providing:

> Judge Presiding
> Sid L. Harle
> Sitting for the 379th District
> Court, Bexar County, Texas

Additionally, both the notice of appeal and the order appointing appellate counsel were filed in the 379th District Court. Because a transfer order was not required in this instance, we cannot conclude that counsel was deficient for failing to object to the lack of such an order.

### Pretrial Motions

Finally, Woolridge argues that counsel was ineffective in failing to file any pretrial motions, including, but not limited to, discovery and suppression motions. He argues that although

he rejected a plea bargain prior to trial, he could not have intelligently considered any plea bargain without discovery. He further argues that there could be no reasonable trial strategy for failure to conduct discovery in a first-degree felony case. He also complains of counsel's failure to file pretrial motions to contest the method, means, or expertise of the DNA testing.

Here, the record is completely silent as to the explanation for counsel's failure to file any pretrial motions. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander*, 101 S.W.3d at 111. While we recognize there may be instances where counsel's conduct is so outrageous that no competent attorney would have engaged in it, *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012), we cannot conclude that this is such an instance. Given the undeveloped record on direct appeal, Woolridge has not overcome the presumption that counsel was effective. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

### *Sufficiency of the Evidence*

Woolridge next contends the evidence is insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of aggravated robbery with a deadly weapon beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The essential elements of the crime are the elements of the offense as defined by a hypothetically correct jury charge, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "as authorized by the indictment" consists

of the statutory elements of the offense as modified by the charging instrument. *Id.*; *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The jury may make reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury may draw reasonable inferences from the basic facts to the ultimate facts). We resolve any inconsistencies in the evidence in favor of the judgment. *Curry*, 30 S.W.3d at 406. This legal sufficiency standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2013). A person commits robbery if, in the course of committing theft and with an intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another; or he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id*. § 29.02(a)(1), (2) (West 2011). A person commits the offense of aggravated robbery when he commits robbery and he causes serious bodily injury to another or uses or exhibits a deadly weapon. *Id*. § 29.03(a)(1), (2) (West 2011).

Woolridge argues that absent his illegal statements and the fruits thereof, the evidence is insufficient to support his conviction. He points out that the victims were unable to identify him at trial, and the video evidence does not show him at the scene of the crime. In short, absent the illegally obtained evidence, he argues there is no evidence linking him to the crime. We disagree. First, in a sufficiency review, we must consider all evidence admitted at trial, whether properly or improperly admitted. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994). The jury was free to consider the evidence

recovered by police, including the sawed off shotgun and the clothing and accessories that matched those Woolridge was wearing in the security video footage the night of the robbery. *See Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006) ("a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary"); *Walker v. State*, No. 02-07-00072-CR, 2008 WL 425996, at *4 (Tex. App.—Fort Worth Feb. 14, 2008, pet. ref'd) (per curiam) (mem. op., not designated for publication) (applying *Poncio* doctrine to robbery).

Second, even without the complained-of evidence, there was still sufficient evidence from which the jury could conclude that Woolridge was the perpetrator of the offense. While Tammie and Don Morgan were not able to identify Woolridge as the perpetrator at trial, video evidence placed Woolridge in the mall parking lot at the time of the robbery, and Woolridge's co-worker and girlfriend positively identified him on the video. The testimony of Tammie and Don Morgan established that a man matching the description of the man on the video entered their car, demanded their belongings in exchange for their lives, and pointed a gun at them both before actually shooting Don in the foot. Both Tammie and Don testified that they feared for their own safety and that of each other. Don was in fact seriously injured, and the sawed off shotgun constitutes a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(1); *see also id*. § 1.07(46) (West Supp. 2013) (defining "serious bodily injury"); *Rodriguez v. State*, 644 S.W.2d 200, 203 (Tex. App.—San Antonio 1982, no pet.) ("A sawed-off shotgun is a firearm and is by definition a deadly weapon."). Tammie's and Don's testimony, combined with the video footage and positive identification of Woolridge on the video, constitutes evidence from which the jury could have inferred that Woolridge was the perpetrator of the charged offense. Viewing all this evidence in the light most favorable to the verdict, *see Brooks*, 323 S.W.3d at 899, 912, we conclude that the evidence is such that a rational trier of fact could have found the essential elements of the offense

of aggravated robbery with a deadly weapon beyond a reasonable doubt.  Accordingly, we overrule Woolridge's sufficiency complaint.

## CONCLUSION

Based on the foregoing reasons, we overrule Woolridge's issues on appeal, and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

DO NOT PUBLISH